No. 102,223

KATHRYN SWANK, *Appellee*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellant*.

(281 P.3d 135)

Opinion filed July 27, 2012.

*John D. Schultz*, of Legal Services Bureau, Kansas Department of Revenue,
argued the cause, and *Matt Franzenburg*, of the same office, was with him on the
briefs for appellant.

*Douglas E. Wells*, of Topeka, argued the cause, and *Charles H. Apt III*, of Apt
Law Offices, LLC, of Iola, was on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This appeal concerns Kathryn Swank's challenge to her driver's license suspension for driving under the influence of alcohol and the appropriate role, if any, for evidence and legal argument regarding post-driving alcohol consumption.

## FACTUAL AND PROCEDURAL BACKGROUND

This case began when Yates Center Police Officer Jacob G. Morrison responded to a 1:46 a.m. call about Swank driving recklessly. The call had been placed by Jana Waddell, who said she and Swank had been in an argument at Waddell's ex-husband's home. Waddell alleged that Swank chased her home and then sped back and forth in front of Waddell's house, almost striking Waddell's car. Waddell described Swank as highly intoxicated and Swank's driving as erratic.

After speaking with Waddell at her house, Morrison left to search for Swank. He found her a few blocks away in Waddell's ex-husband's driveway. Swank had pulled into the driveway and was already out of her car. Morrison saw no alcohol in her hands as he approached her.

According to Morrison, Swank admitted that she had been drinking and admitted that she had followed Waddell. Morrison did not ask Swank if she had consumed any alcohol after she pulled into the driveway, *i.e.*, after she had stopped driving.

Morrison arrested Swank for suspicion of driving under the influence, and Swank submitted to an Intoxilyzer 8000 breath test at the police station. Swank's breath alcohol concentration was .203.

After the test, Morrison returned to Waddell's ex-husband's driveway and searched Swank's car. He found an open can of still-cold beer in a Koozie.

Notes from the Kansas Department of Revenue administrative hearing leading to Swank's license suspension show that the hearing officer was aware Morrison had not asked Swank about any post-driving alcohol consumption and had not personally seen Swank driving or attempting to drive. The notes also record that Swank's counsel moved unsuccessfully to dismiss the proceeding,

arguing Morrison had "no reason to believe" that Swank was driving under the influence.

Swank filed a petition for judicial review of the agency decision. Her petition did not say explicitly that Morrison lacked "reasonable grounds to believe that Swank was operating a vehicle while under the influence," the exact language of K.S.A. 8-1020(h)(2)(A), but it alleged that "[t]he evidence presented at the administrative hearing through the testimony of the arresting officer reflected that the arresting officer did not ever see [Swank] operate the motor vehicle on the date in question" and did not "provide· evidence that [Swank] was under the influence of alcohol at the time she operated the vehicle." It also alleged that the agency's order of suspension was "without adequate support, is therefore unlawful, arbitrary and capricious, and in fact contrary to the evidence presented at the administrative hearing."

District Judge Daniel Creitz conducted a de novo evidentiary hearing on Swank's petition, where he heard testimony from Morrison and Swank.

Morrison's testimony was consistent with the summary set out above. In addition, he acknowledged that, had Swank consumed alcohol after she pulled into the driveway, her post-driving consumption could have had an impact on her Intoxilyzer result.

Swank's testimony before Judge Creitz conformed in large part to Morrison's. As might be expected, however, it also contained details helpful to Swank's explanation of her behavior and Intoxilyzer result.

On the night of her arrest, Swank said, she had consumed three beers at about 6 p.m. She admitted to arguing with Waddell and to following her, but she said she was not drinking at that point. Swank estimated that 15 to 20 minutes passed between the time she left Waddell's street and the time she pulled into the driveway where Morrison found her. When she got out of her car, Swank testified, she was upset; and she drank from a half-pint bottle of "Hot Damn" alcohol. Swank said that she thought that she had thrown the bottle away before Morrison arrived. She said she did not consume any alcohol other than the Hot Damn after driving.

She admitted that the open beer Morrison later found in her car belonged to her.

The district judge ruled in Swank's favor and set the agency order of suspension aside, stating at the hearing that Morrison

"did not have reasonable grounds to believe [Swank] was operating or attempting to operate the motor vehicle while under the influence of alcohol . . . . The issue is the intervening—intervening consumption, which is really uncontroverted . . . . I read (h)(1), K.S.A. 8-1020, it's conjunctive, not disjunctive; and what I mean by that, paragraph one, you have to prove A, B, C and D; and the same applies to paragraph two, when a breath test failure has occurred you have to prove all of those A through H, and it's 'and H.' "

The judge's written order read in pertinent part:

"[T]he court finds that it cannot be determined from the evidence that the officer had reasonable grounds to believe the person was operating a vehicle while under the influence, in accordance with K.S.A. 8-1020(h)(2)(A), in that the evidence does not establish that the Petitioner had a blood alcohol level of .08 or greater, K.S.A. 8-1020(h)(2)(G), while operating or attempting to operate a vehicle, K.S.A. 8-1020(h)(2)(H)."

The Department of Revenue appealed to the Court of Appeals. It did not raise any jurisdictional concern. It argued that Judge Creitz had misapplied the law under K.S.A. 8-1020(h)(2), effectively requiring it to demonstrate that Swank's blood alcohol content was greater than .08 at the time she was driving, something it characterized as "a practical impossibility." It also argued that post-driving alcohol consumption could not, as a matter of law, be considered by a district court on a driver's appeal from a license suspension, citing *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 631, 176 P.3d 938 (2008). In the alternative, the Department argued, if post-driving consumption can be considered, it does not negate the existence of reasonable grounds.

The Court of Appeals panel reversed the district court. *Swank v. Kansas Dept. of Revenue*, No. 102,223, 2010 WL 446036 (Kan. App. 2010) (unpublished opinion). It agreed with the Department's criticism of the standard of proof applied by Judge Creitz, determined that the evidence demonstrated the existence of Morrison's reasonable grounds, and said that Swank's post-driving alcohol consumption could not be considered because it was not

among the legal issues enumerated in K.S.A. 8-1020(h)(2). *Swank*, 2010 WL 44603, at *3-4.

We granted Swank's petition for review. After we did so, the State filed a supplemental brief. That brief, for the first time, conceded that post-driving consumption is a fact that may be considered among other facts that may or may not lead to a law enforcement officer's reasonable suspicion that a suspect has been driving under the influence. Having surrendered on this point of law, the State argued that the Court of Appeals panel nevertheless correctly determined that reasonable grounds existed in this case.

At oral argument before this court, the State advocated for its revised position. It also, for the first time, questioned the existence of subject matter jurisdiction in the district court, because, in its view, Swank failed to plead the issue of reasonable grounds in her petition for judicial review.

## DISCUSSION

### Subject Matter Jurisdiction

Subject matter jurisdiction may be raised at any time. See *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010); *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007). Parties cannot confer subject matter jurisdiction by failure to object to the absence of it. *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, Syl. ¶ 5, 987 P.2d 1096 (1999). And a district court's lack of subject matter jurisdiction to support a ruling means that an appellate court cannot acquire subject matter jurisdiction to review that ruling. See *State v. McCoin*, 278 Kan. 465, 468, 101 P.3d 1204 (2004). Thus, even though the Department did not challenge the district court's subject matter jurisdiction over Swank's petition for judicial review until its counsel presented oral argument before this court, we must begin our discussion with an analysis of whether Swank's petition for judicial review was sufficient to confer subject matter jurisdiction on the district court and, in turn, this court.

K.S.A. 8-1020(h)(2) circumscribes the scope of an administrative hearing on a driver's license suspension, setting forth an exclusive list of issues that may be addressed. See *Martin*, 285 Kan. at 631. That list includes "whether . . . [a] law enforcement officer had

reasonable grounds to believe the person was operating a vehicle while under the influence." K.S.A. 8-1020(h)(2)(A).

The Department is correct that Swank's petition for judicial review does not include an express challenge to the existence of Morrison's "reasonable grounds." Rather, the petition contends that Morrison did not observe Swank driving and that he did not "provide evidence that [Swank] was under the influence of alcohol at the time she operated the vehicle." It also alleges that the agency order of suspension is "without adequate support" and "in fact contrary to the evidence presented at the administrative hearing."

In *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 148 P.3d 538 (2006), we recognized that K.S.A. 77-614(b) controls the required content in a petition for judicial review of an agency driver's license suspension. See *Bruch*, 282 Kan. at 777-85. The statute reads:

"A petition for judicial review shall set forth:
  (1)  The name and mailing address of the petitioner;
  (2)  the name and mailing address of the agency whose action is at issue;
  (3)  identification of the agency action at issue, together with a duplicate copy, summary or brief description of the agency action;
  (4)  identification of persons who were parties in any adjudicative proceedings that led to the agency action;
  (5)  facts to demonstrate that the petitioner is entitled to obtain judicial review;
  (6)  the petitioner's reasons for believing that relief should be granted; and
  (7)  a request for relief, specifying the type and extent of relief requested."

*Bruch* also held that a petitioner must strictly comply with the statute's pleading requirements. *Bruch*, 282 Kan. at 781. In *Bruch*, we held that the petition's assertions that "the officer lacked reasonable suspicion to begin a DUI investigation" and that the officer "lacked probable cause to arrest" were too vague to give the district court subject matter jurisdiction to consider the petitioner's challenge to the administrative hearing admissibility of the results of a preliminary breath test. See *Bruch*, 282 Kan. at 775, 786.

We came to the opposite conclusion 3 years later in *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 396-408, 204 P.3d 562 (2009). In that case, the petition alleged that the motorist had been subjected to an illegal preliminary breath test, that the motorist's

inability to subpoena witnesses to the administrative hearing violated due process, and that a search of the motorist's vehicle was illegal. We held that the petition had strictly complied with K.S.A. 77-614(b)(5)'s command to state facts supporting standing, exhaustion of administrative remedies, and timeliness, even though those concepts were not mentioned explicitly. We also held that the petition strictly complied with K.S.A. 77-614(b)(6)'s command to state reasons for relief specific enough to place the district court and the agency on notice of the issues to be raised. *Kingsley*, 288 Kan. at 407-08.

We do not have a *Bruch* problem here. Swank's petition for judicial review is more similar to the petition before us in *Kingsley*. Swank did not word her petition generally, forcing the agency to guess at the specifics undergirding it. She explicitly alleged specific reasons for relief under K.S.A. 77-614(b)(6)—that Morrison had not observed Swank's driving and that his testimony in the administrative hearing was insufficient to qualify as evidence that she "was under the influence of alcohol at the time she operated the vehicle." Thus, she asserted, the order of suspension was "without adequate support." If Swank's petition failed at anything, it failed to choose and articulate a general label for her claims from among the permitted legal issues enumerated by K.S.A. 8-1020(h)(2). What it did not say was that her specific allegations called into question the existence of Morrison's "reasonable grounds" under K.S.A. 8-1020(h)(2)(A).

This omission is not fatal. "While it is a better practice for the language in the petition for judicial review to mirror the statutory basis for the specific relief requested, the failure to cite to specific statutory language will not result in a lack of jurisdiction to review the agency decision." *Kingsley*, 288 Kan. at 406-07.

Our conclusion that the district court had subject matter jurisdiction in this case also is consistent with the fair notice purpose of the strict compliance pleading requirement discussed in *Bruch* and *Kingsley*. See *Kingsley*, 288 Kan. at 406 (petition for judicial review strictly complies with K.S.A. 77-614[b] when reasons for relief set forth in it give court, agency notice of issues to be raised); *Bruch*, 282 Kan. at 779 (aims of K.S.A. 77-614[b] to assist people

in filing appeals from administrative actions, to facilitate judicial task by serving notice upon opposing parties, reviewing court of issues to be addressed, relevant facts). The record before us demonstrates adequate notice to and comprehension of the nature of Swank's claims on the part of the agency and the district court judge. The Department of Revenue's counsel had participated in the administrative hearing in which the presiding officer noted Swank's unsuccessful motion to dismiss for lack of Morrison's "reason to believe," as well as Morrison's failure to inquire about post-driving consumption. As to Judge Creitz, given the wording of his ultimate spoken and written rulings, it is plain that he understood the import of the petition's allegations, including Swank's challenge to Morrison's "reasonable grounds" in the absence of any inquiry about post-driving alcohol consumption.

*Post-driving Alcohol Consumption*

We turn now to the question that prompted this court to grant Swank's petition for review: What is the proper role of evidence and argument regarding post-driving alcohol consumption in a license suspension proceeding? We address this question briefly, despite the Department of Revenue's change of heart in its supplemental brief and at oral argument, because the Court of Appeals erred in its interpretation of K.S.A. 8-1020(h)(2).

K.S.A. 8-1020(h)(2) provides:

"If the officer certifies that the person failed a breath test, the scope of the [administrative] hearing shall be limited to whether:

    (A) A law enforcement officer had reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol or drugs, or both, or had been driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system;

    (B) the person was in custody or arrested for an alcohol or drug related offense or was involved in a vehicle accident or collision resulting in property damage, personal injury or death;

    (C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto;

    (D) the testing equipment used was certified by the Kansas department of health and environment;

(E) the person who operated the testing equipment was certified by the Kansas department of health and environment;

(F) the testing procedures used substantially complied with the procedures set out by the Kansas department of health and environment;

(G) the test result determined that the person had an alcohol concentration of .08 or greater in such person's breath; and

(H) the person was operating or attempting to operate a vehicle."

The Court of Appeals held that this statute's silence on post-driving alcohol consumption meant that such consumption could not be considered in a license suspension proceeding. But this statute clearly and unambiguously limits only the *issues* that can be considered, not the *evidence* that can be marshaled by the parties to determine the outcome on those issues. See *Allen v. Kansas Dept. of Revenue,* 292 Kan. 653, 656, 256 P.3d 845 (2011) (whether officer has reasonable grounds under K.S.A. 8-1020[h][2][A] identified as "issue"). Swank's argument, with which the Department of Revenue now agrees, is that post-driving alcohol consumption is a *fact* potentially relevant to the determination of the enumerated *issue* of whether an officer had "reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol." K.S.A. 8-1020(h)(2)(A); *cf.* K.S.A. 8-1020(l)(2) (addressing evidence that can be admitted at administrative hearing on license suspension, including testimony of licensee).

A panel of the Court of Appeals that shared one member with the panel in this case so held in *Katz v. Kansas Dept. of Revenue,* 45 Kan. App. 2d 877, 893-94, 256 P.3d 876 (2011), where the panel stated:

"There may be instances where a driver's consumption of alcohol after operating a vehicle but prior to taking a breath test may properly result in KDR's decision not to suspend driving privileges. But that post-driving consumption, under a plain reading of K.S.A. 2009 Supp. 8-1020(h)(2) (A)-(H), should be evaluated by KDR's administrative hearing officer and the courts in the context of the officer's reasonable grounds to believe whether the driver had operated the vehicle while under the influence of alcohol. K.S.A. 2009 Supp. 8-1020(h)(2)(A). The more alcohol a person drinks after driving but before testing, the more unreasonable may be the officer's grounds for belief that the person drove while under the influence of alcohol."

Courts in Nevada and Missouri also have recognized the potential relevance of post-driving alcohol consumption in similar cir-

cumstances, although they have been careful to note that it is the information known to the officer at the time that matters and that courts should avoid giving post-driving alcohol consumption controlling weight. See *Warner v. Missouri Director of Revenue*, 240 S.W.3d 745, 751 (Mo. App. 2007) ("We do not see how the fact that the Narrons informed the officer that Warner had two beers after the accident necessarily totally demolished the value of all the factors mentioned above tending to create probable cause to believe that Warner was intoxicated and driving at the time of the accident . . . . We think a reasonable officer would consider *all* the pertinent information available."); *Weaver v. State, Dept. of Motor Vehicles*, 121 Nev. 494, 498-99, 117 P.3d 193 (2005) ("That Weaver chose later to modify his story and testify at the hearing that when he returned home after the accident he consumed four or five shots of tequila and five or six beers has no impact upon the inquiry into the reasonableness of the officer's beliefs because this was not part of the information evaluated by Officer Kisfalvi at the scene.").

Both points are well taken. We would add only that an officer cannot insulate his or her assessment of the existence of reasonable grounds from review or criticism by a district or appellate court by maintaining a posture of willful ignorance on a suspect's post-driving alcohol consumption. Reasonableness is key. If the situation is such that a reasonable law enforcement officer would investigate, it behooves an actual officer to do so. This is particularly true when an officer's personal observations of the scene or the suspect suggest the possibility of post-driving alcohol consumption. Such consumption is a factor to be considered and evaluated, not ignored.

Because the Court of Appeals erred as a matter of law in refusing to consider Swank's testimony about her post-driving alcohol consumption, this case must be reversed and remanded to the Court of Appeals for reevaluation under the correct legal standard. " 'Reasonable grounds to believe' a driver is under the influence . . . demands consideration of the behavior of a driver before, during, and after he or she is behind the wheel." *Martin*, 285 Kan. at 632. According to Swank's testimony before Judge Creitz, her behavior after she was behind the wheel included her consumption of the Hot Damn, and that fact could appropriately be considered

as part of the evaluation of the existence of Morrison's reasonable grounds on de novo judicial review of her driver's license suspension. See K.S.A. 8-1020(p) (judicial review "shall be trial de novo"). Likewise, it is common sense that Morrison's apparent failure to investigate post-driving alcohol consumption by Swank could have undercut the reasonableness of his reasonable grounds under 8-1020(h)(2)(A). On remand the Court of Appeals must examine these possibilities through the lens of the correct standard of review.

*Existence of Reasonable Grounds*

Although the parties have worded the second question in this case in a variety of confusing ways, once the role of post-driving alcohol consumption is understood, the ultimate issue still requiring resolution by the Court of Appeals is whether Judge Creitz erred in determining that reasonable grounds were lacking.

An appellate court generally reviews a district court's decision in a driver's license suspension case to determine whether it is supported by substantial competent evidence. *Allen*, 292 Kan. at 657 (citing *Drake v. Kansas Dept. of Revenue*, 272 Kan. 231, 233-34, 32 P.3d 705 [2001]). Only when there is no factual dispute does an appellate court exercise de novo review. *Allen*, 292 Kan. at 657 (citing *State v. Ingram*, 279 Kan. 745, 752, 113 P.3d 228 [2005]).

Further, Kansas courts evaluate "reasonable grounds" by looking to probable cause standards. *Allen*, 292 Kan. at 656. "Probable cause is determined by evaluating the totality of the circumstances," giving consideration to "the information and fair inferences therefrom, known to the officer at the time of arrest," with "no rigid application of factors." *Allen*, 292 Kan. at 656-57.

Swank does not dispute the Intoxilyzer test result. See K.S.A. 8-1020(h)(2)(G). Nor does Swank dispute that she was operating or attempting to operate a vehicle. See K.S.A. 8-1020(h)(2)(H). It appears that she challenges only the sufficiency of proof of the temporal relationship between her test result and her driving, as well as the connection of both to the existence of Morrison's reasonable grounds under K.S.A. 8-1020(h)(2)(A).

In its supplemental brief, the Department of Revenue argues that K.S.A. 8-1020(h)(2)(A) does not require that the evidence establish Swank had a particular breath alcohol concentration at the time she was driving. We agree. As the Court of Appeals panel observed, it is, practically speaking, impossible for an Intoxilyzer test result to be obtained simultaneously with vehicle operation or attempt to operate. The only required temporal relationship between testing and operation or attempt to operate is any implied by the reasonable grounds standard in K.S.A. 8-1020(h)(2)(A) and by K.S.A. 8-1020(h)(2)(F), which prescribes that testing procedures comply with those set out by the Kansas Department of Health and Environment. This would include any regulation for timely test administration.

Having said this, however, we do not read Judge Creitz' spoken or written rulings to mean that he required a demonstration of what is, practically speaking, impossible. On the contrary, we believe his remarks were directed at the effect uninvestigated post-driving alcohol consumption might have on the probative value of a test result of .08 or greater, when the issue before the court is whether a law enforcement officer had reasonable grounds to believe that the suspect was under the influence while driving. See *Katz*, 45 Kan. App. 2d at 890 (plain reading of K.S.A. 8-1020[h][2][A]-[H] provides meaningful connection; temporal relationship between operating motor vehicle, being under influence of alcohol established when evidence shows officer had reasonable grounds to believe person operating vehicle while under influence of alcohol). It is evident to us that Judge Creitz' comments were meant to emphasize this point in the context of a case including evidence of such consumption.

On remand, the Court of Appeals—bearing in mind that Judge Creitz had an opportunity to observe the demeanor and presentation of Morrison and Swank on the witness stand, an opportunity no appellate court can have—must confine itself to determining whether there is substantial competent evidence to support Judge Creitz' ruling that reasonable grounds were lacking. The Court of Appeals reevaluation must take into account that it was legally permissible for Judge Creitz to consider Swank's testimony about her

post-driving alcohol consumption and any evidence that Morrison did or did not investigate it thoroughly. The Court of Appeals must also read Judge Creitz' spoken and written comments about the absence of reasonable grounds in the context framed by the post-driving consumption evidence before him, not as his demand that the Department's proof of breath alcohol concentration meet an unrealistically high bar.

The Court of Appeals decision is reversed and the case remanded to it for review in light of this opinion.