NOT DESIGNATED FOR PUBLICATION

No. 114,342

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARGARET GILLAM,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Saline District Court; JEROME P. HELLMER, judge pro tem. Opinion filed August 26, 2016. Reversed.

*John D. Shultz*, of Kansas Department of Revenue Legal Services Bureau, for appellant.

*Roger D. Struble*, of Blackwell & Struble, LLC, for appellee.

Before LEBEN, P.J., STANDRIDGE and ARNOLD-BURGER, JJ.

LEBEN, J.: After a Salina police officer stopped Margaret Gillam's car because of an expired tag, the officer began to suspect that Gillam had been driving while intoxicated. The officer smelled alcohol and saw that Gillam had bloodshot eyes, and Gillam admitted she had been drinking at a local bar. The officer then had her take some roadside tests to determine whether she was intoxicated. Gillam showed indicators of impairment on the walk-and-turn test and then failed a preliminary breath test. At that point, the officer arrested Gillam and took her to a police station, where she failed a more formal breath test—showing a blood-alcohol level of .127, well over the .08 legal limit.

Gillam appealed the resulting suspension of her driver's license, arguing that the officer didn't have reasonable grounds to request the formal breath test. The district court agreed, noting that Gillam hadn't committed a traffic infraction, spoke clearly, responded to the officer's questions, and showed no signs of a lack of coordination while getting out of her car or standing waiting for the officer to proceed with testing. The district court also questioned whether the officer had followed guidelines by observing Gillam for 15 minutes (to be sure she didn't eat or drink anything) before taking the preliminary breath test. The district court ordered Gillam's license reinstated, and the Department of Revenue appealed to our court.

We have carefully reviewed the video of the traffic stop and find that there's no question that the officer followed proper procedures before giving the preliminary breath test. Accordingly, the officer could properly consider its result (a failure) in deciding whether to arrest Gillam and have her take the formal breath test. See K.S.A. 2015 Supp. 8-1012(d) (providing that results of preliminary breath test "shall be used" in determining whether to arrest driver and whether to order formal breath test). Based on the failed preliminary breath test, the odor of alcohol, admitted drinking, bloodshot eyes, and one failed field sobriety test, the officer had reasonable grounds to conduct the formal breath test. Accordingly, we reverse the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Most of the facts in this case aren't disputed because they are based on a video of the traffic stop, which we have carefully reviewed.

Around 1:30 a.m. on April 13, 2014, Officer Chuck Huen of the Salina Police Department was on patrol when he noticed a vehicle with an expired license plate. Huen pulled the vehicle over. Gillam, who was driving, hadn't committed any traffic offenses

2

other than driving with an expired tag. Huen testified that when he pulled her over, he had no reason to suspect that she was under the influence of alcohol.

When Huen learned that Gillam was driving home from a bar, he asked if she'd been drinking, and she said she'd had a couple of drinks. Gillam clarified, both to the officer and at trial, that by "a couple," she'd meant that she'd had "a double"—one drink with two shots of alcohol in it. The video shows Gillam speaking clearly and answering Huen's questions directly; she's forthright and follows all of Huen's directions.

Huen asked Gillam to perform two field sobriety tests, the one-leg-stand test and the walk-and-turn test. The video shows that she had no difficulty getting out of the vehicle and stood next to it without swaying or using it for balance. Gillam passed the one-leg-stand test, although Huen said she swayed during it. The district court noted specifically that she didn't lose her balance, raise her arms, or put her foot down during this test.

On the walk-and-turn test, Huen said Gillam showed three signs of impairment: she didn't remain in the instructional position, she missed connecting heel to toe on two steps, and she stopped during the test. Gillam marked this test as "failed" on the certification form, although he testified only that the test showed "indicators of impairment," not that she "failed." The video shows that she didn't remain in the instructional position and that she paused during the turn, but because the video is dark, it's not clear enough to see the heel-toe connections.

Huen then asked Gillam to take a preliminary breath test, and she agreed. Huen testified that the protocol for giving a preliminary breath test requires that the officer wait 15 minutes before giving the test. The video shows Huen and another officer conferring about whether the 15 minutes had elapsed and Huen stating that Gillam was showing some but not a lot of indicators of being under the influence. When Huen thought he had

complied with the 15-minute observation period, he gave Gillam the preliminary breath test, and the result was over the legal limit.

We have reviewed the sequence of events shown on the video. Huen approaches the car and begins talking with Gillam 2 minutes and 40 seconds (2:40) after the tape begins. At 4:13, he asks her to step out of the car, and she is visible on the tape from that point until she takes the preliminary breath test. She begins the preliminary breath test at 18:41, 16 minutes after he first approached the car. Huen was directly next to the car door and could observe from a very close perspective before she got out of the car. After that, Huen does go back and forth to his car—first to get something to put on the pavement as a line for the walk-and-turn test and later to sit while waiting out the 15-minute observation period. Even if Huen looked away momentarily during this time period (which we don't know since he's off-screen), Gillam is shown on the tape from 4:13 on, and she never puts anything into her mouth.

As reasonable grounds to believe that Gillam was under the influence, Huen also noted that he smelled alcohol, that Gillam had bloodshot eyes, and that she slurred her speech occasionally. After watching the video, the district court specifically concluded that Gillam did not slur her speech and was able to easily and effectively communicate. The district court's interpretation of the tape on this point is a reasonable one.

Huen arrested Gillam for driving under the influence. The formal, or evidentiary, breath test showed a result of .127, which is over the legal limit of .08. K.S.A. 2015 Supp. 8-1567. As a result, the Kansas Department of Revenue suspended Gillam's driver's license. Gillam requested an administrative hearing, and the hearing officer affirmed the decision to suspend her license. Gillam then filed a petition for review in the Saline County District Court.

At trial, the district court watched the video of the traffic stop, and Huen and Gillam testified as described above. The only issue was whether the officer had reasonable grounds to request the evidentiary breath test: the burden was on Gillam to show that Huen lacked reasonable grounds to believe that she had been driving under the influence of alcohol. K.S.A. 2015 Supp. 8-1020(q). The district court said it had "a substantial question about the amount of time lapse" for the 15-minute observation period before the preliminary breath test. The court then concluded, based on all the circumstances, that Huen didn't have reasonable grounds and reinstated Gillam's driver's license.

The Kansas Department of Revenue has appealed to this court.

ANALYSIS

The Department argues that the district court wrongly determined that Huen didn't have reasonable grounds to believe that Gillam was driving under the influence.

Generally, we review the district court's ruling in a driver's-license-suspension case to determine whether it was supported by substantial evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Evidence is substantial when a reasonable person would accept it as adequate to support a conclusion. *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015). When reviewing factual findings, appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make determinations about witness credibility. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011).

However, when there are no factual disputes, we review the district court's legal conclusions anew, without deference to the district court's decision. *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, Syl. ¶¶ 1-2, 233 P.3d 286 (2010); see *Sjoberg v. Kansas Dept. of Revenue*, No. 103,937, 2012 WL 3966511, at *9 (Kan. App. 2012)

5

(unpublished opinion) ("[O]nce we have the facts in hand, either undisputed ones or those as found by the district court, we must independently review the ultimate legal question here, whether the officer had reasonable grounds to believe [the driver] had been driving under the influence of alcohol.").

Anyone who drives a car in Kansas agrees, by implication, to submit to a breath test for alcohol. K.S.A. 2015 Supp. 8-1001(a) (implied-consent statute). But before a police officer can ask a person to take a breath test, the officer must have arrested or taken the person into custody for violating a state statute and must have "reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol." K.S.A. 2015 Supp. 8-1001(b)(1)(A). "The reasonable grounds test . . . is strongly related to the standard for determining probable cause to arrest. [Citation omitted.] Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime." *State v. Johnson*, 297 Kan. 210, 222, 301 P.3d 287 (2013). Probable cause is "a higher standard than reasonable suspicion but a lower standard than necessary to establish guilt beyond a reasonable doubt." *Bixenman v. Kansas Dept. of Revenue*, 49 Kan. App. 2d 1, 6, 307 P.3d 217 (2013).

Here, substantial evidence supported all of the district court's factual findings except one. The district court found "a substantial question about the amount of time lapse between the observation period of the officer and the actual administration" of the preliminary breath test. According to Huen, the protocol for giving a preliminary breath test requires that the officer wait 15 minutes before giving the test, and the video shows Huen and another officer conferring about whether the 15 minutes have elapsed. The district court seems to have interpreted that conversation to mean that they probably didn't comply with the observation period.

6

But this conclusion isn't supported by the evidence. As we noted in our factual summary, 16 minutes went by between the time Gillam came to the driver's side door of Gillam's car and the preliminary breath test. An officer can use the preliminary test result as long as he or she substantially complies with the waiting period, see *State v. Barzegar*, No. 110,206, 2014 WL 3020850, at \*8-9 (Kan. App. 2014) (unpublished opinion), and Huen fully complied with the waiting period here. Accordingly, he had a right to consider the result of the preliminary breath test—a failure—when deciding whether to arrest Gillam and to give her a formal, evidentiary breath test. See K.S.A. 2015 Supp. 8-1012(d).

While the district court didn't specifically refuse to consider Gilliam's failure of the preliminary breath test, it seems to have given it substantially less weight. Compare *Barzegar*, 2014 WL 3020850, at \*8-9 (upholding district court's decision to give a preliminary breath test less weight because it wasn't completely clear whether the officer had complied with waiting period), with *Sjoberg*, 2012 WL 3966511, at \*4 (upholding district court's decision to disregard preliminary breath test entirely because officer only waited 5 minutes before giving the test). The court should not have given diminished weight to the preliminary breath test here.

The district court is certainly right that there were some facts in Gillam's favor: She didn't commit any traffic offenses, was able to communicate clearly and easily, was able to stand up straight without swaying, and passed the one-leg-stand test. But considering the preliminary breath test alongside the other factors—Huen smelled alcohol, Gillam admitted to drinking, Gillam's eyes were bloodshot, she showed indicators of impairment on the walk-and-turn test, and it was 1:30 in the morning—these circumstances create reasonable grounds to believe Gillam had been driving under the influence.

In support of the district court's ruling, Gillam cites *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 22-23, 290 P.3d 555 (2012), in which the Kansas Supreme Court held that an officer didn't have probable cause to arrest Sloop based solely on the early morning hour, smell of alcohol, admission to having had one drink, and bloodshot eyes, where there were no traffic violations, no slurred speech, and no fumbling or stumbling *and* the results of the preliminary breath test were invalidated because the test was given incorrectly. But here, unlike in *Sloop*, we can consider Gillam's failure of the preliminary breath test along with the other facts.

Considering all the facts together, Huen had reasonable grounds to believe that Gillam had been driving under the influence. Accordingly, the Department of Revenue properly suspended her driver's license. We therefore we reverse the district court's judgment.