NOT DESIGNATED FOR PUBLICATION

No. 120,891

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KELLY SHRIVER,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Opinion filed June 26, 2020.
Affirmed.

*Nicholas David*, of The David Law Office LLC, of Lawrence, for appellant.

*John Shultz*, of Legal Services, Kansas Department of Revenue, for appellee.

Before BRUNS, P.J., GREEN, J., and TIMOTHY J. CHAMBERS, District Judge, assigned.

PER CURIAM:  Kelly Shriver appeals from the district court's decision affirming
the Kansas Department of Revenue's administrative suspension of her driving privileges.
Two related issues are presented to the court. First, did the officer have reasonable
grounds to request a preliminary breath test? Secondly, did the officer have probable
cause to arrest Shriver for DUI? For reasons as set out below, we affirm.

Shriver was arrested for DUI on March 31, 2018. The stop was initiated by Kansas
Highway Patrol Trooper Eric Otero-Hernandez after he witnessed Shriver's vehicle
swerving in its lane several times and varying its speed from 50 to 68 miles per hour for

1

no apparent reason. When Trooper Otero-Hernandez contacted Shriver, he did not smell an odor of alcohol but noticed she had just lit a cigarette. Shriver denied consuming any alcohol. Otero-Hernandez returned to his patrol car where he spoke with his field training officer, Trooper Dray Carlton. Carlton said he would speak with Shriver. When Carlton returned, he advised Otero-Hernandez they needed to perform standardized field sobriety tests (SFSTs) on Shriver. Carlton indicated he did smell the odor of alcohol on Shriver's breath and that sometimes drivers smoke a cigarette to hide the odor of alcohol. Various field sobriety tests were performed on Shriver. Shriver failed the walk-and-turn and one-leg stand tests. Otero-Hernandez also had Shriver perform the finger dexterity and partial alphabet tests and she passed both tests. Otero-Hernandez asked Shriver to submit to a preliminary breath test (PBT) and she refused. He arrested Shriver for driving under the influence (DUI). She subsequently refused evidentiary testing.

Otero-Hernandez completed a notice of suspension form (DC-27) based on Shriver's refusal to submit to evidentiary testing. Shriver timely requested an administrative hearing with the Kansas Department of Revenue (KDR). KDR affirmed the suspension of Shriver's driving privileges. Shriver timely petitioned for review before the district court. The district court affirmed KDR's suspension order. Shriver timely appealed. Additional facts are set forth as necessary herein.

"An appellate court generally reviews a district court's decision in a driver's license suspension case to determine whether it is supported by substantial competent evidence." *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Appellate courts do not exercise de novo review unless there is no factual dispute. 294 Kan. at 881. "Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. In other words, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 2, 136 P.3d 390 (2006). "Whether substantial

2

competent evidence exists is a question of law." *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010). But in evaluating the evidence presented at trial, this court does not weigh conflicting evidence or evaluate the credibility of witnesses. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

## DID THE OFFICER HAVE REASONABLE GROUNDS TO REQUEST A PRELIMINARY BREATH TEST?

"Kansas courts evaluate 'reasonable grounds' by looking to probable cause standards. 'Probable cause is determined by evaluating the totality of the circumstances,' giving consideration to 'the information and fair inferences therefrom, known to the officer at the time of arrest,' with 'no rigid application of factors.'" *Swank*, 294 Kan. at 881. The totality of the circumstances must be viewed in their entirety, giving due consideration to both the inculpatory and exculpatory factors. See *City of Wichita v. Molitor*, 301 Kan. 251, 266-67, 341 P.3d 1275 (2015).

Shriver argues the district court made multiple factual and legal errors in finding reasonable grounds existed for Trooper Otero-Hernandez to request the PBT. Shriver first argues the district court erred in relying on the "fellow officer rule" by attributing some of Trooper Carlton's observations to Trooper Otero-Hernandez. Shriver is mistaken as to what constitutes the "fellow officer rule." Shriver cites *State v. Perez,* 306 Kan. 655, 396 P.3d 78 (2017), which would be a correct citation when referencing testimony offered not to prove the truth of matter asserted. The "fellow officer rule" states that collective information of police officers and law enforcement officers involved in an arrest can form the basis for probable cause, even though the information is not with the knowledge of the arresting officer. *State v. Clark*, 218 Kan. 726, 732, 544 P.2d 1372 (1976). In a cooperative investigation by many police officers, the knowledge of one officer is the knowledge of all in determining probable cause for an arrest, provided there has been communication between the individual officers. *Clark*, 218 Kan. at 732. Trooper Otero-

3

Hernandez was involved in his first DUI investigation as a trooper. Trooper Carlton was his training officer. Clearly communication existed between the two troopers and the knowledge and observations of Trooper Carlton constituted part of the collective knowledge of the two troopers.

The district court noted that Trooper Otero-Hernandez signed the DC-27 form, indicating, among other things, he observed bloodshot eyes and an odor of alcohol. But the district court also noted: "Trooper Otero-Hernandez testified Carlton shared his observations. There was some question whether Trooper Otero-Hernandez personally observed glassy or bloodshot eyes or smelled the odor of alcohol, or whether this information came only Carlton's observations."

Shriver contends: "The trial court erroneously relied upon Carlton's observations in issuing its opinion concerning the odor of alcohol, observation of Shriver's speech, and detection of Shriver's eyes." The district court's order gives no indication it relied on or particular weight to these observations, whether by Trooper Carlton or Trooper Otero-Hernandez. The district court stated: "The DVD reveals nothing about the odor of alcohol or bloodshot eyes, but it does demonstrate that Shriver had slurred speech throughout the encounter and exhibited poor balance or coordination. There were reasonable grounds to request a preliminary breath test." Here, the district court generally acknowledged the discrepancy between the statements on the DC-27 form and Trooper Otero-Hernandez' testimony and statements on the dash camera recording. It noted those discrepancies could not be resolved based on the recording but looked to the video, which objectively corroborated observations regarding Shriver's speech, balance, and coordination. As another panel of this court held:

> "K.S.A. 2016 Supp. 8-1002(b) provides that a 'signed certification or a copy or
> photostatic reproduction [of a DC-27 form] shall be admissible in evidence in all
> proceedings brought pursuant to this act, and receipt of any such certification, copy or

4

reproduction shall accord the department authority to proceed as set forth herein.' As such, the statements contained in the DC-27 are admissible evidence that can be considered by a district court in an administrative suspension case regardless of whether the certifying officer testifies at trial. *Pfeifer v. Kansas Dept. of Revenue*, 52 Kan. App. 2d 591, 601, 370 P.3d 1200 (2016). Once admitted into evidence, it is up to the district court to determine how much weight to give the statements contained in a DC-27 as compared to the other evidence presented at trial." *Lonnberg v. Kansas Dept. of Revenue*, No. 115,957, 2017 WL 2901180, at *2 (Kan. App. 2017) (unpublished opinion).

Here, it appears the district court properly weighed the statements in the DC-27 against the evidence presented at trial. This court does not weigh conflicting evidence or determine credibility in evaluating the evidence underlying the district court's decision. See *Hodges*, 288 Kan. at 65.

It is immaterial whether Trooper Otero-Hernandez, Trooper Carlton, or both observed glassy or bloodshot eyes or smelled the odor of alcohol on Shriver. Evidence exists in the record to support either finding, but clearly it was in the collective knowledge of the two troopers.

Shriver further argues the district court erred in finding reasonable grounds for requesting the PBT under the totality of the circumstances. She asserts the district court ignored exculpatory factors and only focused on the officers' inculpatory observations. Shriver is correct the district court did not explicitly discuss the balancing of inculpatory and exculpatory factors in finding reasonable grounds.

Supreme Court Rule 165 (2020 Kan. S. Ct. R. 215) imposes on the district court the duty to provide adequate findings of fact and conclusions of law on the record to explain the court's decision on contested matters. See K.S.A. 2019 Supp. 60-252. Generally, a party bears the responsibility to object to inadequate findings of fact and conclusions of law to give the district court an opportunity to correct any alleged

5

inadequacies. *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). When no objection is made to a district court's findings of fact or conclusions of law on the basis of inadequacy, an appellate court can presume the district court found all facts necessary to support its judgment. *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017). Only if the record does not support such a presumption and the lack of specific findings precludes meaningful review, may an appellate court consider a remand. *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

Here, Shriver did not object to a lack of findings. The record indicates the trial court made detailed findings of fact and conclusions of law and the record is more than sufficient to presume the district court made all findings necessary to support its decision. The district court indicated it watched the video from Trooper Otero-Hernandez' dash camera. In its order, the district court noted Shriver successfully completed the finger dexterity and partial alphabet tests. Shriver is correct the district court did not mention: her alertness to the officer's emergency lights, as evidenced by her quickly pulling over; the lack of difficulty in the stopping sequence; her general balance and coordination when handing Trooper Otero-Hernandez the requested documents, exiting her vehicle, and standing outside the vehicle; and her ability to follow the officers' instructions. Even so, the officers followed Shriver for several minutes during which she weaved within her lane many times and, at times, touched the right fog line and inside lane marker. Shriver also showed unusual changes in speed, driving between 50 and 68 miles per hour.

Shriver was generally steady and showed no serious lack of balance or coordination while standing outside the vehicle. However, Shriver failed both the one-leg stand and walk-and-turn tests. Shriver argues "[she] performed the Walk and Turn and One Leg Stand without showing any tangible signs of impairment." Shriver claims she "did not exhibit any of the unusual manifestations of intoxication in performing the standardized tests, only technical irregularities that may result from performing non-

traditional movements in a novel manner." In support of her argument, she cites *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1219, 442 P.3d 1038 (2019), stating:

> "[F]ield sobriety tests rely on common knowledge, not scientific foundation, for their reliability. It follows that a district court judge could rely on common knowledge to evaluate an arresting officer's grading of field sobriety tests. It is not enough for a police officer to simply write down that a driver failed 3 out of 8 parts of a test, without allowing those results to be contested before a neutral fact-finder. Otherwise, the arresting officer becomes the final arbiter of his or her own reasonableness."

Here, Trooper Otero-Hernandez indicated he observed several clues of impairment on the walk-and-turn test: Shriver broke her stance during the instructional phase; failed to step heel-to-toe on two steps; stepped off the line by an inch or two; failed to keep her hands at her side; and failed to make the turn according to his instructions. It is true Shriver broke her stance during the instructional phase. However, Trooper Otero-Hernandez did not tell her to get back in her stance. Shriver did not appear to break her stance due to a loss of balance and appeared to remain balanced and attentive through the remainder of the instructions. She also properly resumed the stance before starting the test. Shriver performed the first part of the test as instructed, keeping her hands at her side and taking nine heel-to-toe steps toward Trooper Otero-Hernandez' patrol car, counting each step aloud. She did not miss heel-to-toe, step off the line, or lose her balance going forward.

Trooper Otero-Hernandez instructed Shriver to turn around using a series of small steps. He did not tell Shriver how many small steps she needed to take, and in his demonstration, Trooper Otero-Hernandez took only three steps. Shriver made the turn by pivoting around on her feet; however, she did not lose her balance or step off the line. On the way back, Shriver took nine steps and counted each step aloud. Trooper Otero-Hernandez testified Shriver missed heel-to-toe on two of these steps by "more than two inches," but she properly took 16 of 18 total heel-to-toe steps during the test. It is not

7

clear from the video how far Shriver's feet were apart in the two improper steps, but it does not show Shriver taking an unusually long stride or readily apparent misstep.

Trooper Otero-Hernandez also testified Shriver stepped off the line by "[m]aybe two inches. Maybe an inch to the right." But he admitted the line was an imaginary line. In other words, there was no clearly drawn line for Shriver to follow or Trooper Otero-Hernandez to measure any perceived deviations from. The video shows Shriver maintaining a fairly straight line going toward and away from Trooper Otero-Hernandez' patrol car. She does not take any significant step off the imaginary line Trooper Otero-Hernandez told her to follow. However, toward the end of the last nine steps, Shriver appeared to lose her balance, leaning to her left. She lifted her hand from her sides by several inches, appearing to steady herself by doing so.

Overall, most of the clues Trooper Otero-Hernandez observed during the walk-and-turn test appear to be minor or technical irregularities, some of which may be attributable to ambiguities in his instructions. Trooper Otero-Hernandez also expressed concern to Carlton about the "verbiage" he used while conducting the tests. The only common-sense indicator of impairment in Shriver's performance of the walk-and-turn test was bringing her arms away from her side to steady herself during the last few steps. However, Shriver's performance on the one-leg stand test showed significant lack of balance and coordination. She lost her balance approximately six seconds into the test, fell to her left, and had to hop on one foot and swing her hands out to the side to steady herself. Collectively, the SFSTs showed a fairly significant lack in balance and coordination, although much more so on the one-leg stand test.

The only other time Shriver appeared to lose her balance was when she bumped into the side of her truck after she was instructed to take her hat off and put it in the vehicle. Any loss of balance was minimal, and Shriver did not fall or struggle in regaining her footing. Shriver's truck was also parked a few feet from the right fog line on

8

I-70 and she appeared to be trying to stay out of the way traffic as she approached her truck. Under the circumstances, Shriver briefly bumping into her truck did not significantly add to the indicators of lack of balance.

Shriver was generally able to answer the officers' questions appropriately. But she spoke quietly and slowly, and her speech sounded somewhat slurred throughout the encounter. However, Shriver was not incoherent, stammering, or completely fumbling with her words. Still, as Otero-Hernandez testified, and the video shows, Shriver did count and recite the letters slowly during testing. And Trooper Otero-Hernandez testified her slow speech and "heavy tones" were a concern.

Shriver did not admit to consuming any alcohol and Trooper Otero-Hernandez did not smell any odor of alcohol when he made initial contact, although Trooper Otero-Hernandez told Trooper Carlton that Shriver had a freshly lit cigarette in the car. Otero-Hernandez told Carlton that Shriver sounded relaxed and her eyes looked normal, but Shriver did not make much eye contact with Otero-Hernandez early in the stop. Otero-Hernandez testified that while he did not smell alcohol, he believed Shriver could have lit a cigarette to cover up the odor of alcohol.

Shriver argues the totality of the circumstances here provide "even less factors than those discussed in *Molitor*." In *Molitor*, the stop was based on Molitor not signaling his turn, although Molitor had come to a complete stop at the stop sign and turned into the appropriate lane. Molitor properly maintained his lane after turning but bumped into the curb after the officer initiated the traffic stop. The officer observed Molitor's eyes were watery and bloodshot and a strong odor of alcohol was emanating from the vehicle. When asked, Molitor told the officer he had consumed two or three beers. Molitor's speech was not slurred; he had no difficulty producing his driver's license, insurance information, and vehicle registration; and he did not lose his balance while exiting his vehicle or walking thereafter. The officer continued to smell a strong odor of alcohol as

9

Molitor exited the vehicle. The officer conducted field sobriety tests and Molitor passed both the walk-and-turn and one-leg stand tests. In considering this evidence, *Molitor* held:

> "[T]he officer here testified that Molitor ran into or onto the curb while stopping his vehicle. Obviously, evidence of unsafe driving can suggest intoxication. But that alleged lapse of coordination must be viewed in conjunction with what followed. After stopping the vehicle, Molitor spoke without slurring his words, produced his identifying documents without difficulty, exited and proceeded from his vehicle without losing his balance, and, most importantly, passed the two admissible SFSTs. In other words, under the totality of circumstances, one could not reasonably suspect that Molitor's balance was impaired by alcohol to the point of being legally under the influence of alcohol." 301 Kan. at 268.

Here, there are important distinctions from *Molitor*. Based on the record, it is unclear whether Trooper Otero-Hernandez smelled alcohol or observed bloodshot and watery eyes. There is perhaps a reasonable inference Shriver was using a cigarette to cover up the odor of alcohol. Shriver did not admit to consuming any alcohol. Shriver did, however, show some slurred speech. But more importantly, Shriver failed the two SFSTs and showed a lack of balance and coordination in doing so. In fairness, her balance and coordination appeared fine outside of the SFSTs.

Nevertheless, Shriver's driving was concerning as she weaved within her lane many times prior to the officers stopping her. The video also reflects Shriver considerably varying her speed. Unlike Molitor, Shriver did not strike anything when she pulled over. However, from the dash camera footage, it is clear the officers carefully selected a location where they and Shriver could safely pull their vehicles off the road before initiating the stop. In other words, Shriver did not run into anything but there was nothing for her to run into.

10

In contrast, Molitor failed to signal his turn but came to a complete stop before turning, turned into the proper lane, and drove straight within his lane prior to being stopped. Molitor's driving and performance on the SFSTs did not show nearly the level of lack of coordination and potential impairment as Shriver's. Here, there was objective evidence of impairment given Shriver's performance on the SFSTs and the observations of her vehicle in motion. While Shriver did not admit to consuming alcohol and it is unclear Trooper Otero-Hernandez smelled an odor of alcohol, those facts are not particularly significant given the possibility Shriver used a cigarette to conceal the odor of alcohol. While Shriver passed the finger dexterity and partial alphabet tests, she counted the numbers and recited the letters slowly during the respective tests and appeared to have some mildly slurred speech while doing so.

The video of the traffic stop is included on the record on appeal. A review of the video by this court supports the findings of the trial court in relation to the video.

Might it have been better if Trooper Carlton has also testified at the trial court level? Probably. The evidence of intoxication was not overwhelming. But that does not change the fact that under the totality of the circumstances, which includes the testimony of Trooper Otero-Hernandez, the DC-27 form, and the video, substantial and competent evidence exist in the record to support the trial court's finding that the trooper had reasonable grounds to request the PBT.

*Probable cause to arrest*

Shriver argues Trooper Otero-Hernandez lacked probable cause to arrest her for DUI; therefore, he did not have authority to request subsequent evidentiary testing. Her argument on this point is largely a continuation of the first issue. Obviously, if Trooper Otero-Hernandez lacked reasonable grounds to request a PBT, he did not have probable cause to arrest Shriver after she refused the PBT. The only argument Shriver adds is it

11

was improper for the district court to consider the PBT refusal as circumstantial evidence Shriver knew she would have failed.

Under K.S.A. 2019 Supp. 8-1001(n), the refusal of evidentiary testing "shall be admissible in evidence against the person at any trial on a charge arising out of the alleged operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both." In *State v. Robinson*, 55 Kan. App. 2d 209, 220-23, 410 P.3d 923 (2017), another panel of this court held drivers have a constitutional right to refuse a PBT and cannot be held liable for a traffic infraction for doing so. Subsequently, in *Forrest v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 121, 128, 425 P.3d 624 (2018), *rev. denied* 309 Kan. 1347 (2019), another panel of this court rejected the same argument Shriver is making here, stating:

> "In *Robinson*, this court held that K.S.A. 2016 Supp. 8-1012 is unconstitutional to the extent that the statute criminalizes a person's right to withdraw his or her consent to a warrantless search and it is not narrowly tailored to serve a compelling state interest. 55 Kan. App. 2d 209, Syl. ¶ 2. Stated differently, it is unconstitutional for the State to impose a criminal penalty upon a driver for refusing to submit to a PBT. But this holding does not mean that a court cannot consider a driver's PBT refusal as part of the reasonable grounds analysis. The PBT is still a valid tool for a law enforcement officer to use in investigating a possible DUI, but the officer should no longer warn the driver that refusal to submit to testing is a traffic infraction. An officer may draw a negative inference from a driver's refusal to take a PBT. The refusal amounts to circumstantial evidence that the driver knows he or she has been drinking and likely will fail the test. See K.S.A. 2017 Supp. 8-1001(n) (driver's refusal of evidentiary breath test is admissible evidence at trial); *Chambers v. Kansas. Dept. of Revenue*, No. 115,141, 2017 WL 1035442, at *5 (Kan. App. 2017) (unpublished opinion) (driver's refusal of PBT can be considered in determining existence of reasonable grounds)."

Contrary to Shriver's arguments, the reasoning in *Forrest* is sound. The use of the PBT refusal as circumstantial evidence does not constitute a criminal penalty. As the

12

United States Supreme Court noted in *Missouri v. McNeely*, 569 U.S. 141, 161, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013): "[M]ost States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution. See NHTSA Review 173-175; see also *South Dakota v. Neville*, 459 U.S. 553, 554, 563-564, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983) (holding that the use of such an adverse inference does not violate the Fifth Amendment right against self-incrimination)." Shriver's argument is unpersuasive. Moreover, Shriver does not argue that without the PBT refusal Trooper Otero-Hernandez would have lacked probable cause to arrest her. An issue not briefed is deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). Shriver has not demonstrated Trooper Otero-Hernandez lacked reasonable grounds to request a PBT. And Shriver has not demonstrated those same reasonable grounds, standing alone, did not constitute probable cause to arrest for DUI.

Affirmed.