IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,352

KELLY CASPER,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

SYLLABUS BY THE COURT

1.

The determination of whether an officer has reasonable grounds for a particular action involves a mixed question of law and fact, and appellate courts review the ultimate legal conclusion—whether reasonable grounds existed—independently, while deferring to the district court's factual findings that are supported by substantial competent evidence.

2.

An arresting officer's recorded statement to a driver that she reeked of alcohol is nothing more than an out-of-court statement without evidentiary value unless the usual standards for establishing the competence of evidence are followed.

3.

Although field sobriety tests may have objective grading criteria that officers must follow, it is an officer's subjective opinion that determines whether a suspect has passed the objective field sobriety tests.

4.

Field sobriety tests are based on common knowledge, and a reviewing judge may use common knowledge to reevaluate a driver's performance on field sobriety tests.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 14, 2016. Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed June 14, 2019. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

*Adam D. King*, of Legal Services Bureau, Kansas Department of Revenue, argued the cause, and *J. Brian Cox*, of the same office, was on the briefs for appellant.

*Jonathan W. McConnell*, of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: The Kansas Department of Revenue (KDOR) suspended Kelly Casper's driving privileges based on her arrest and refusal to take a blood alcohol test. She appealed to district court, where the judge held that she met her burden of proving both that the arresting officer lacked reasonable grounds to believe that she was driving while impaired and lacked probable cause to arrest her. KDOR appealed to the Court of Appeals, which reversed, holding that the record on appeal supported an opposite conclusion. We granted Casper's petition for review and now reverse the decision of the Court of Appeals panel.

FACTS

According to Casper's testimony before the district court, on October 25, 2013, she was visiting family in Wichita, Kansas, and had a glass of wine at around 5:30 in the

afternoon. A couple of hours later, she took some sips of alcoholic beverages at a friend's house in order to taste-test the drinks for an upcoming party. At around midnight, she drove away from her friend's house and, when making a right turn, turned into the left travel lane instead of the lane nearest her turn lane.

Officer Steven Thornton of the Wichita Police Department witnessed the wide turn, which, while a relatively common type of turn, is a traffic infraction. He followed Casper's car for a while and did not observe any other traffic infractions. He saw no driving indicators that the operator was impaired. He turned on his emergency blinking lights and followed her as she signaled, pulled over into the right lane, and then turned onto a side street. At the same time, a video recording of the encounter was commenced, which was later entered into evidence.

Thornton asked Casper if she had been drinking, and she said yes. He then asked her to get out of the car and perform a couple of field sobriety tests. According to Thornton's testimony in district court, Casper's eyes were not bloodshot, and her statements were, for the most part, clear and concise. Thornton testified that Casper was initially "fine," but, over the course of several tests, she "became a tad bit uncooperative" and "a little argumentative." He asked her to perform three field sobriety tests: a horizontal gaze nystagmus test, a walk-and-turn test, and a balance-on-one-foot test. In his estimation, she did not perform these tests satisfactorily, and he placed her under arrest. She subsequently refused to take a breathalyzer test.

Thornton issued Casper a notice of suspension for refusing to take a blood alcohol test. Casper timely requested an administrative hearing. The KDOR Division of Vehicles conducted an administrative hearing and, affirming the administrative action suspending her license, concluded that law enforcement had reasonable grounds to believe that

3

Casper was operating a vehicle while under the influence of alcohol and was lawfully in custody.

Casper filed a timely petition for review with the Sedgwick County District Court. On two separate hearing dates, the district court heard the testimony of Thornton and Casper and viewed the video recordings of the stop and subsequent events. After hearing the witnesses and arguments by counsel, the district court announced from the bench its conclusion that Casper had met her burden of proving both a lack of reasonable grounds for believing that she was driving while impaired and a lack of probable cause to support a lawful arrest. The court announced extensive findings explaining the basis of its decision.

KDOR filed a timely notice of appeal to the Court of Appeals. The Court of Appeals reversed the district court, reviewing the testimony and exhibits and essentially holding that the totality of the circumstances favored KDOR's position, not Casper's. *Casper v. Kansas Dept. of Revenue*, No. 115,352, 2016 WL 6024622 (Kan. App. 2016) (unpublished opinion).

ANALYSIS

On review of the Court of Appeals decision and the district court order, we are tasked with ascertaining whether substantial competent evidence in the record supported the district court's factual findings and whether the conclusion derived from those findings is legally correct. We adopt the reviewing standard set out in *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 415, 233 P.3d 286 (2010): The determination of whether an officer has reasonable grounds for a particular action involves a mixed question of law and fact, and appellate courts review the ultimate legal conclusion— whether reasonable grounds existed—independently, while deferring to the district

4

court's factual findings. See also *State v. Johnson*, 297 Kan. 210, 221, 301 P.3d 287 (2013) ("Whether reasonable grounds exist to believe a person has been operating a vehicle while under the influence of alcohol is a question of law."); *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012) (appellate courts generally review district court decisions in driver's license suspension cases to determine whether supported by substantial competent evidence).

It is difficult to cleanly differentiate the two components in a case such as this. Factual findings are intertwined with judging the reasonableness of the officer's actions. As a consequence, the court must view the two in combination, examining the totality of the factual circumstances. See, e.g., *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 23, 290 P.3d 555 (2012) (probable cause to execute a warrantless arrest is subject to totality of circumstances test).

Here, Casper was unwilling to submit to a breath test. If a driver refuses to take a breath test, K.S.A. 2018 Supp. 8-1002(a)(1) directs the Kansas Department of Revenue Division of Vehicles to suspend a person's driving privileges when the following four conditions are met:

> "(A) There existed reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol . . . ;
> "(B) the person had been placed under arrest, was in custody or had been involved in a vehicle accident or collision;
> "(C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto; and
> "(D) the person refused to submit to and complete a test as requested by a law enforcement officer."

5

K.S.A. 2018 Supp. 8-1020(a) provides that "[a]ny licensee served with an officer's certification and notice of suspension [for failing or refusing a breath test], may request an administrative hearing." K.S.A. 2018 Supp. 8-1020(h)(1) explains that the scope of review at that hearing is limited to whether the four conditions outlined in K.S.A. 2018 Supp. 8-1002 have been met. Each of those four conditions is also within the purview of the district court when it reviews the decision from the administrative hearing. *Sloop,* 296 Kan. at 17.

Our caselaw suggests the arrest in subsection B must be a lawful arrest in order to satisfy that element. In *Sloop*, 296 Kan. at 19, we considered K.S.A. 8-1001, which sets out the conditions under which a law enforcement officer has the authority to request a test of a person's blood, breath, urine, or other bodily substance to determine the presence of alcohol and drugs. Two conditions must be met. One of those is that "[t]he person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance." K.S.A. 2018 Supp. 8-1001(b)(1)(A).

We held that, in order for this element to be satisfied, the person had to be under lawful arrest, and, for the arrest to be lawful, the officer had to have probable cause to make it. The court based this holding on the plain language of the statute and implied that the same plain language analysis applied to the requirement in K.S.A. 2018 Supp. 8-1020(h)(1)(B). *Sloop*, 296 Kan. at 19, 20. The analysis in the present case therefore proceeds from an understanding that an arrest must be lawful in order for the second element of K.S.A. 2018 Supp. 8-1002 (or K.S.A. 2018 Supp. 8-1001[b][1]) to be satisfied.

The district court here determined both that reasonable grounds did not exist for Thornton to believe Casper was operating her vehicle while under the influence of alcohol and there was no lawful arrest because Thornton lacked probable cause to make

6

the arrest. The district court treated these two concepts as equivalent. Our court has implied the terms are essentially the same, with at most only subtle differences. See *Johnson*, 297 Kan. at 222 (reasonable grounds test of K.S.A. 8-1001[b] is "strongly related" to standard for determining probable cause to arrest). Even if it was technically error for the district court to conflate the two matters, it was an error without consequence. Logic tells us that, if the district court properly decided there were no reasonable grounds to believe Casper was driving while under the influence alcohol, there would also be no probable cause to arrest her.

Casper petitioned for judicial review of the administrative hearing decision when her license was suspended. In that petition, she argued that the first element of the statute permitting the suspension of her license was not met because the law enforcement officer did not have reasonable grounds to believe she was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs.

The district court noted that its scope of review was limited to the four requirements outlined in the statutes. It ultimately concluded that Casper had met her burden of showing that the decision to suspend her license should be set aside.

The district court discussed extensively the evidence it had before it and concluded that Thornton lacked both reasonable grounds to believe Casper was impaired and probable cause to place her under arrest. The Court of Appeals decided that the district court gave too much weight to some factors and deemed some of the grounds on which the district court relied to be inappropriate factors. The Court of Appeals then independently weighed the inculpatory and exculpatory evidence, reaching a conclusion contrary to that of the district court.

7

In answering the questions posed by the standard of review, it is necessary to look to the evidence before the district court and how the district court considered that evidence.

Casper testified that she was very nervous when she was pulled over because she had never been pulled over by police, she had never received a ticket, and she had never been arrested before. She testified that her breath did not smell of alcohol, an assertion that she firmly stood by under rigorous cross-examination about how she could know what her breath smelled like (during which she informed the court that her breath smelled like coffee at the time of the cross-examination). She testified that she was not "tipsy" and that she was completely sober at the time of the stop. She also testified that she declined to take the breath test because she did not trust the police officer based on misleading statements he had made to her at the stop.

The district court determined that there was no evidence that a strong odor of alcohol was emanating from Casper's person. An examination of the record supports this conclusion. Significantly, Thornton did not testify in court that Casper's breath smelled of alcohol. He was questioned briefly about whether he detected the smell of alcohol, and he testified that he detected "some odor" "on her." The video recording shows Thornton saying to Casper, "You reek of alcohol." Counsel for KDOR never asked him to explain why he said that and never asked him whether her breath exhibited the odor of alcohol. No foundation was laid to the subject because KDOR never sought Thornton's testimony about her breath.

The statement on the video recording did not constitute evidence for the district court to consider because it was never presented to the court in a context of evidence that she had been drinking. Unlike the visual evidence of Casper's performance on the sobriety tests, the recording provided nothing that would actually establish that Thornton

8

smelled alcohol on Casper's breath. It was nothing more than an out-of-court statement caught on a recording, and it was no more probative than Casper's assertion on the video that her fiancé was an FBI agent. The only competent evidence put forward to the district court (or to the Court of Appeals and this court) was Thornton's single statement that he smelled "some odor" of alcohol from Casper's person and Casper's testimony that there was no alcohol on her breath at the time of the stop.

The Court of Appeals concluded that the district court's finding that there was no evidence of a strong odor of alcohol was "not supported by substantial competent evidence because the officer told Casper in the video that she reeked of alcohol." *Casper*, 2016 WL 6024622, at *3. This statement is incorrect. The evidence on which the Court of Appeals relied was not substantial; it was nothing more than a statement on the recording. The actual trial testimony was of "some odor," which was balanced against Casper's testimony of no odor. The district court's conclusion that there was no evidence of a "strong odor" of alcohol, after considering both Thornton's and Casper's testimony, was well supported by substantial evidence.

In analyzing whether to consider the officer's decision not to utilize a preliminary breath test (PBT) in the analysis, the district court commented:

> "I am not in any way finding that a PBT is required in every DUI investigation, but the lack of one in this case is part of the evidence, just like if there was no fingerprint testing done on a gun when it could have been done. That is evidence that a jury could consider that the police did not perform certain tests that they had the ability to perform."

Criticizing this comment, the Court of Appeals wrote that

> "the district court put too much emphasis on what proof a PBT could have provided had one been performed. . . . It . . . likened the officer's failure to perform a PBT to the failure

9

to perform fingerprint testing on a gun. But the question was not whether Casper was guilty beyond a reasonable doubt of operating a vehicle under the influence of alcohol. Instead, the issue was merely whether the officer had, at the time, reasonable grounds to believe Casper was operating her vehicle while under the influence of alcohol. The results of a PBT are just another factor for a court to consider when examining this question." *Casper*, 2016 WL 6024622, at *4.

The Court of Appeals suggested that the district court found for Casper because it believed the officer's failure to conduct a PBT created reasonable doubt that she was driving while intoxicated. The record does not reveal this to be the case—the district judge made it clear that he was considering the lack of a PBT alongside other evidence to determine whether "the totality of the circumstances" showed that the officer had reasonable grounds to believe Casper was driving under the influence.

To the extent that the Court of Appeals found that the district court failed to consider the totality of the circumstances to reach its decision, it erred. After hearing all the testimony and reviewing the recordings, the district court discussed the circumstances of the stop. It noted that Casper did not delay turning off the roadway when Thornton activated the signals on his squad car; she properly signaled, pulled over into the right-hand lane, and turned at the next available street entrance. There was no evidence of bad driving beyond initially turning into the wrong lane, something that drivers commonly do. She exhibited no slurred speech. No preliminary breath test was requested. The horizontal gaze nystagmus test was not admitted for the purpose of evaluating the results of the test but only to show whether Casper followed directions. Although Thornton asked her whether she had any drinks that day, he did not ask when she consumed the drinks. She exhibited no stumbling when she got out of the car. The district court stated that the absence of a PBT was significant in this case because the evidence of driving under the influence was "certainly not strong."

10

Thornton testified that Casper scored 5 out of 8 on and failed the walk-and-turn test and scored 2 out of 4 on and failed the one-leg-stand test. On the walk-and-turn test, she was losing her balance before the instructional phase, she started before she was told to start, she used her arms for balance, she failed to touch her toe, and she pivoted in the wrong direction. On the one-leg stand test she used her arms for balance and placed her foot down after approximately six seconds.

The Court of Appeals referred to the field sobriety tests as "objective" tests and held it was error for the district court to rely on "subjective" observations of Casper's driving and behavior. *Casper*, 2016 WL 6024622, at \*3. It is true that the field tests possess indicia of objectivity. See, e.g., *City of Wichita v. Molitor*, 301 Kan. 251, 261, 341 P.3d 1275 (2015). But it is also true that, although field sobriety tests may have objective grading criteria that officers must follow, it is an officer's subjective opinion that determines whether a suspect has passed the objective field sobriety tests. See *State v. Garris*, 603 So. 2d 277, 282 (La. App. 1992); see also *Molitor*, 301 Kan. at 267 (officers may be influenced by their impressions of alcohol consumption when rating performance on so-called objective tests).

Watching Casper's recorded attempts to follow Thornton's directions would validly demand that the district court evaluate her performance in light of how a reasonable person would respond to the officer's directions. In *State v. Witte*, 251 Kan. 313, 321, 836 P.2d 1110 (1992), we held that field sobriety tests rely on common knowledge, not scientific foundation, for their reliability. It follows that a district court judge could rely on common knowledge to evaluate an arresting officer's grading of field sobriety tests. It is not enough for a police officer to simply write down that a driver failed 3 out of 8 parts of a test, without allowing those results to be contested before a neutral fact-finder. Otherwise, the arresting officer becomes the final arbiter of his or her own reasonableness.

11

The court determined that Thornton's instructions for the field tests were given very quickly and it was not clear that Casper was unable to perform tasks as instructed. For example, when taking the HGN test, she initially moved her head slightly, but, when Thornton reminded her that she was not to move her head at all, she fully complied. He nevertheless decided she failed to follow his instructions. The court balanced the totality of the circumstances and found that Casper sustained her burden of showing the agency decision should be set aside. The court then went back over all the inculpatory factors that the State argued in its written pleadings and explained why it did not find them persuasive.

These findings should be reviewed in light of the deference given on appeal to the fact-finder below, who heard the witnesses, viewed their demeanor, and resolved conflicting evidence. See, e.g., *State v. Ward*, 292 Kan. 541, 581, 256 P.3d 801 (2011). "In determining whether substantial competent evidence supports the district court's findings, appellate courts must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it." *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017); see *Ornelas v. United States*, 517 U.S. 690, 698-99, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) (independent review of reasonable grounds and probable cause is necessary for appellate courts to maintain control of legal principles, but "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers").

Our Court of Appeals nevertheless found that the district court erred in considering the constellation of factors making up the totality of the circumstances. The Court of Appeals concluded that the "totality of the circumstances supports instead a

12

finding that the officer had reasonable grounds to believe that Casper was operating her vehicle while under the influence of alcohol." *Casper*, 2016 WL 6024622, at \*4.

The Court of Appeals stated that the district court "put too much emphasis on what proof a PBT could have provided." *Casper*, 2016 WL 6024622, at \*4. The Court of Appeals pulled apart other aspects of the district court's findings, stating that the district court overly relied on its subjective evaluation of the video recording. 2016 WL 6024622, at \*4. The Court of Appeals criticized the district court's evaluation of the evidence: "Rather than relying on its subjective observations of Casper's behavior, the district court should have relied on the objective results of the field sobriety tests which Casper had failed." 2016 WL 6024622, at \*3.

Perhaps the judges on the Court of Appeals panel would have emphasized different factors and reached a different result if they had been the sitting on the district court bench for the de novo trial. But the district court took into account all the various evidence it had before it. The evidence before it was substantial and competent, and it based its decision on that evidence. It made reasonable inferences from that evidence. The Court of Appeals improperly discounted the weight that the district court gave to a wide variety of evidentiary factors and reweighed the evidence.

A careful review of the evidence presented to the district court confirms that court's conclusion that Casper gave very little indication of driving while impaired. While she may have had "some odor" of alcohol emanating from her—which was disputed— alcohol did not appear to affect her behavior, her demeanor, or her performance on tests. On the whole, she performed well on the tests. To be sure, she sometimes started performing tests before Thornton finished giving her the instructions, and she had to start over. She became agitated and argued with him, demonstrating her frustration with being

subjected to field sobriety tests. She moved her head slightly when she began the gaze test but corrected that when Thornton repeated his instruction.

CONCLUSION

While reasonable people may reach differing conclusions from the evidence presented to the district court, appellate courts are expected to give deference to the fact-finder who was in the courtroom when the testimony was given and where the inferences from the facts were reached. In keeping with the principles for reviewing lower court decisions, we conclude that substantial competent evidence supported the district court's factual findings and that the consequent legal conclusions were correct.

We therefore reverse the Court of Appeals and affirm the district court.