IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,467

STATE OF KANSAS,
*Appellee*,

v.

AARON DAVID CASH,
*Appellant*.

SYLLABUS BY THE COURT

1.

An appellate court generally reviews the factual findings underlying a district court's suppression decision using a substantial competent evidence standard and the ultimate legal conclusion drawn from those factual findings by applying a de novo standard. An appellate court does not reweigh evidence.

2.

For a law enforcement officer's seizure of a citizen to be constitutionally valid, the officer must know of specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction.

3.

Authority for a traffic stop seizure ends when tasks tied to the reason for the traffic stop are or reasonably should have been completed.

1

4.

An officer may extend a traffic stop beyond the duration necessary to fulfill the purpose of the stop when a detainee's responses and the surrounding circumstances give rise to an objectively reasonable and articulable suspicion that criminal activity is occurring.

5.

When determining whether an officer had reasonable suspicion to extend a stop, a court must find by a preponderance of the evidence that the State presented a particularized and objective basis for suspecting the person stopped is engaged in criminal activity. The officer making the stop must be able to articulate more than an inchoate and unparticularized suspicion or hunch.

6.

Reasonable suspicion is a lower standard than probable cause. What is reasonable depends on the totality of circumstances as viewed by a trained law enforcement officer.

7.

The reasonable suspicion analysis requires use of an objective standard based on the totality of the circumstances, not a subjective standard based on the detaining officer's personal belief.

8.

The totality of the circumstances standard does not envision a reviewing court pigeonholing each factor as to innocent or suspicious appearances but instead requires the court to determine whether all the circumstances objectively justify the detention.

2

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 27, 2020. Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed April 2, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Branden A. Bell*, of Morgan Pilate LLC, of Kansas City, Missouri, argued the cause and was on the briefs for appellant.

*Kendall S. Kaut*, assistant district attorney, argued the cause, and *Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.:  Aaron Cash appeals from the district court's decision to deny his motion to suppress drug evidence seized during a traffic stop. On review, Cash argues the arresting officer lacked the reasonable suspicion necessary to extend the traffic stop to ask questions about a plastic baggie and a Crown Royal bag that were hanging out of a partially opened safe on the rear floorboard of the van Cash was driving. This investigation ultimately led to a search of the van that uncovered drug and drug paraphernalia evidence for which Cash was later charged—evidence that Cash argues should have been excluded because the stop was unlawfully extended. At the motion to suppress hearing, the district court found the officer had reasonable suspicion to extend the traffic stop and denied Cash's motion. Following a bench trial on stipulated facts, the court convicted Cash of multiple drug charges. A majority panel of the Court of Appeals affirmed the district court's suppression ruling. This court granted Cash's petition for review of the decision below. Because the totality of circumstances as viewed by a trained law enforcement officer gave rise to a reasonable suspicion that criminal activity was occurring during the traffic stop, we affirm.

3

FACTS

After an August 2018 traffic stop, the State charged Cash with possession of methamphetamine, possession of diazepam, and possession of drug paraphernalia. Cash moved the district court to suppress evidence found as a result of the traffic stop, arguing that Lenexa Police Officer Caitlin Demarest violated Cash's Fourth Amendment right against unreasonable searches and seizures. Specifically, he asserted that the initial stop was unjustified, Demarest illegally extended the duration and scope of the traffic stop, and Demarest lacked the requisite probable cause to search the van Cash was driving.

At the hearing on Cash's motion, the State called Officer Demarest as its lone witness. On direct examination, Demarest testified that she was on patrol one evening in late August 2018 when she saw a white van driving without a registration decal on the license plate. When she ran the license plate number, the dispatcher advised her that the plate was registered to a Chevrolet Venture, which was the correct make and model of the van. However, Demarest mistakenly heard "Chevrolet Avenger," which led her to believe that the license plate did not belong to the van. She initiated a traffic stop based on these two perceived infractions.

Officer Demarest approached the van and made contact with Cash. Cash identified himself and explained that he did not own the van, but he gave her the correct owner's name. Demarest asked for the van's registration and insurance information, but Cash had trouble locating it and began rifling through several pieces of paper. While Cash was doing that, Demarest shined her flashlight toward the back of the van. On the rear floorboard, she noticed a partially opened flat safe. Hanging out of the safe was a plastic baggie and a Crown Royal bag. Demarest testified she could not see what was inside either bag at the time. But Demarest went on to say that when she had come across Crown Royal bags in the past, she "more often than not" found drug paraphernalia in

4

them. She said she had seen this "[m]ultiple times" before. Based on that experience, Demarest asked Cash to open the safe, and Cash complied. As he opened the safe, Demarest observed orange hypodermic needle caps inside the plastic baggie. According to Demarest, she asked Cash to leave the safe door open, but he slammed the door shut and exclaimed, "'I think there's a pipe in there.'"

Officer Demarest called for backup. Once her backing officer arrived, she asked Cash to step out of the van. Cash once again told Demarest that there was a methamphetamine pipe in the safe. At this point, Demarest believed she had probable cause to search the van. Before doing so, however, she ran Cash's information and discovered there was a warrant for his arrest. Demarest arrested Cash and placed him in the back of her patrol car. Demarest testified she and her backing officer then searched the van, during which they discovered methamphetamine, narcotics, and drug paraphernalia.

Before questioning Officer Demarest on cross-examination, defense counsel introduced into evidence her body camera video from the stop. The video was played in open court. After redirect by the State and closing arguments, the district court issued its ruling from the bench. First, it found that the initial stop was valid because the evidence established the van's license plate did not have a registration sticker, which violated K.S.A. 2018 Supp. 8-142. Second, it found that Officer Demarest extended the duration and scope of the initial stop. But the court held that Demarest had the requisite reasonable suspicion to extend the stop once she observed the plastic baggie and Crown Royal bag hanging out of the safe. For this reason, the court denied Cash's motion to suppress.

The matter proceeded to a bench trial on stipulated facts, and the district court found Cash guilty on all counts. The court sentenced him to 1 year of probation subject to an underlying 11-month prison term.

5

On appeal, Cash argued that Officer Demarest unlawfully extended the duration and scope of the traffic stop when she questioned him about the safe without having any reasonable suspicion of a crime. The State conceded that the stop was extended but argued Demarest had reasonable suspicion that a drug crime was occurring once she saw the plastic baggie and the Crown Royal bag hanging out of the partially opened safe. A majority panel affirmed the district court's denial of Cash's suppression motion. In analyzing the totality of the circumstances, the majority panel held that Demarest had reasonable suspicion to extend the stop when she saw the plastic baggie and the Crown Royal bag hanging out of the safe. In support of this holding, the majority cited Demarest's training and her experience that a "Crown Royal bag 'more often than not' contains drug paraphernalia." *State v. Cash*, No. 121,467, 2020 WL 1482413, at *4 (Kan. App. 2020) (unpublished opinion). It then concluded that Demarest had the "minimum level of objective justification required to support a reasonable suspicion." 2020 WL 1482413, at *4.

Judge Buser dissented, disagreeing with the majority's legal conclusion that under these totality of circumstances Officer Demarest had articulable facts to constitute reasonable suspicion that the Crown Royal bag contained drug paraphernalia. First, Judge Buser noted that Demarest did not testify in any detail about her drug stop training and experience, which he believed was necessary to establish an adequate foundation for her stated suspicion that Crown Royal bags often contain drug paraphernalia. Second, Judge Buser believed it significant that Demarest never explicitly testified that it was *both* the Crown Royal bag and the plastic baggie together that made her suspicious of drug activity. Finally, Judge Buser pointed to two prior cases—a Kansas Supreme Court case and an unpublished Court of Appeals case—to support his argument that reliance on innocent items such as empty plastic baggies or Crown Royal bags by themselves could

6

not provide a valid basis for reasonable suspicion. 2020 WL 1482413, at \*5 (Buser, J., dissenting).

Cash timely filed a petition for review challenging the legality of extending the duration of the stop to investigate possible drug activity.

ANALYSIS

On a motion to suppress, an appellate court generally reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo. An appellate court does not reweigh evidence. *State v. Jones*, 300 Kan. 630, 638, 333 P.3d 886 (2014). Where, as here, the underlying facts are undisputed, this court's analysis will focus only on the legal conclusions drawn from those facts. See *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). The State bears the burden of proving that the search and seizure were lawful. K.S.A. 22-3216(2).

When a law enforcement officer conducts a routine traffic stop on a public roadway, a seizure of the driver occurs within the meaning of the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights. *Jones*, 300 Kan. at 637. As this court has recognized, a traffic stop is analogous to an investigative detention; as such, it is treated as a nonconsensual police-citizen contact under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). "In order for a law enforcement officer's seizure of a citizen to be constitutionally reasonable, the officer must know of specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." *Jones*, 300 Kan. at 637. To be valid, an investigative detention must be justified at its inception, and it must be reasonably related in scope to the circumstances

7

justifying the initial interference. *State v. Jimenez*, 308 Kan. 315, 323, 420 P.3d 464 (2018).

On review, Cash does not challenge the initial stop. Rather, he contends the duration and scope of the initial traffic stop were unlawfully extended into an investigation of criminal drug activity. In a traffic stop context, an officer's "mission" is typically limited to the following: (1) checking the driver's license, (2) determining whether the driver has any outstanding warrants, (3) inspecting the vehicle's registration and proof of insurance, and (4) asking questions related to the reasons for the initial stop. See *State v. Schooler*, 308 Kan. 333, 345-46, 419 P.3d 1164 (2018) (citing *Rodriguez v. United States*, 575 U.S. 348, 355, 135 S. Ct. 1609, 191 L. Ed. 2d 492 [2015]). The officer also may take "'negligibly burdensome precautions'" to complete the stop safely. *Schooler*, 308 Kan. at 346. Otherwise, authority for a traffic stop seizure ends when tasks tied to the reason for the traffic stop are or reasonably should have been completed. *Rodriguez*, 575 U.S. at 354. This means that an officer cannot conduct nonconsensual inquiries unrelated to the mission in a way that measurably extends the duration of the stop. *Schooler*, 308 Kan. at 346; *Jimenez*, 308 Kan. at 324, 326. Yet these limitations do not mean that police must perform their duties with a blind eye. When a detainee's responses and the surrounding circumstances give rise to an objectively reasonable and articulable suspicion that criminal activity is occurring during a traffic stop, an officer can broaden his or her inquiry to satisfy those suspicions. *Jimenez*, 308 Kan. at 324; *State v. Morlock*, 289 Kan. 980, 996, 218 P.3d 801 (2009).

When determining whether an officer had reasonable suspicion to extend a stop, a court must find by a preponderance of the evidence that the State presented "'a particularized and objective basis' for suspecting the person stopped" is engaged in criminal activity. *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998). The officer making the stop must be able to articulate more than an "inchoate and

unparticularized suspicion or 'hunch.'" *State v. Moore*, 283 Kan. 344, 354, 154 P.3d 1 (2007) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 145 L. Ed. 2d 570 [2000]).

With these legal principles in mind, we turn to the claims presented by Cash in his petition for review: (1) the district court's finding of reasonable suspicion is not supported by substantial competent evidence in the record; and (2) the panel failed to consider the objective component of the test in reviewing the district court's decision.

1. *Substantial competent evidence*

Cash makes two arguments to support his claim that the district court's finding of reasonable suspicion is not supported by substantial competent evidence. First, he argues the district court improperly considered the baggie and the safe as part of its reasonable suspicion calculus because Officer Demarest never testified that she found the baggie or the safe to be suspicious, and the Crown Royal bag, by itself, does not support a finding of reasonable suspicion. Assuming we are persuaded by this argument, Cash claims the Court of Appeals improperly made factual findings about the baggie and the safe in affirming the district court's reasonable suspicion decision.

a. *The baggie and the safe*

Cash readily acknowledges Demarest's testimony stating that she questioned Cash about the safe after seeing a purple Crown Royal felt bag and a baggie hanging out of a partially opened safe on the rear floorboard of the van. And Cash agrees that the district court concluded as a matter of law that Demarest had the requisite reasonable suspicion to extend the stop once she observed the plastic baggie and Crown Royal bag hanging out of the safe. But Cash argues the district court's conclusion is legally flawed because it

9

improperly considered the baggie and the safe as part of its reasonable suspicion calculus. Cash relies on this court's holding in *Jones* to support his argument.

In *Jones*, an officer pulled Jones over after he observed her "'driving erratically,'" "'[t]urning abruptly'" to head in the opposite direction, and then turning without using her signal. 300 Kan. at 633. The officer asked Jones for her license and observed that she appeared to have "'cotton mouth'" and slurred speech. 300 Kan. at 633. He then observed "an empty, clear plastic bagg[ie]" in Jones' car, which he testified indicated "'the possibility of controlled substances'" inside the vehicle based on his own training and experience. 300 Kan. at 633. The officer asked Jones for permission to search the car, but she refused. He then contacted his supervisor and a K-9 unit to come to the scene. The K-9 detected narcotics in the car. A subsequent search revealed the presence of cocaine and related paraphernalia. Jones filed a motion to suppress the evidence seized in the search, which the magistrate judge denied but the district court judge later granted because the officer lacked the reasonable suspicion necessary to extend the stop. A majority panel of the Court of Appeals affirmed the decision.

On review, we affirmed the district court's legal conclusion that the officer unlawfully extended the stop. We analyzed the stop under the objective totality of the circumstances standard and determined that the facts available to the officer at the time he extended the stop—i.e., Jones driving erratically; the officer observing a clear, empty plastic baggie in her car; and the officer's subjective experience that such plastic baggies meant drugs might be in the car—were not sufficient to support a "'particularized and objective basis' for suspecting legal wrongdoing." 300 Kan. at 645, 647-48. We held the Court of Appeals majority properly looked to the record to determine whether the officer articulated with particularity the factual basis for reasonable suspicion. "Nevertheless, we disagree[d] with the Court of Appeals majority's suggestion, which is implied in its language although not specifically stated, that the officer must neatly package the factors

10

in a single succinct answer." 300 Kan. at 645. We reiterated "the requirement that a court consider the totality of the circumstances, all facts and inferences, [and] not a select few." 300 Kan. at 645. We concluded that the court "should not focus on a single answer and overlook an officer's omission of a factor when asked to list the basis for a reasonable suspicion if at some point in the officer's testimony he or she indicated the circumstance was a factor in developing a suspicion of illegal activity." 300 Kan. at 645.

Consistent with the legal framework set forth in *Jones*, we begin our analysis here with a review of the facts that were available to Officer Demarest at the moment she began inquiring about the safe. Demarest testified at the suppression hearing that while Cash was looking through papers trying to locate the insurance and other documentation related to the traffic stop, she shone her flashlight on the rear floorboard of the van and observed a plastic baggie and a Crown Royal bag hanging out of the partially opened flat safe. While Demarest testified she could not see what was inside either bag at the time, she said that when she had come across Crown Royal bags in the past, she "more often than not" found drug paraphernalia in them and had seen this "[m]ultiple times" before. Based on what she observed, as well as her knowledge and experience as a law enforcement officer, Demarest said she began to suspect illegal drug activity was occurring and proceeded to ask Cash questions about the safe.

Although she testified about finding drug paraphernalia in Crown Royal bags in prior investigations, Demarest (1) did not provide similar examples to explain a reason for believing the baggie and the safe were suspicious and (2) did not expressly testify that, under the totality of the circumstances, she collectively considered the Crown Royal bag and small plastic baggie found hanging out of the partially opened safe to be suspicious. Cash argues the absence of this specific testimony prevented the court from considering the baggie and the safe in its reasonable suspicion calculus. We disagree.

11

The reasonable suspicion analysis requires use of an objective standard based on the totality of the circumstances, not a subjective standard based on the detaining officer's personal belief. See *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (justification for investigatory detention not based upon officer's subjective motivations); *United States v. Sanchez*, 555 F.3d 910, 922 (10th Cir. 2009) (finding irrelevant under an objective standard whether the officer intended to arrest the defendant for some other crime than the crime ultimately charged); *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998) (concluding an officer's subjective intent to arrest the defendant for a particular offense is immaterial for analyzing search incident to arrest; search justified if objective facts would have supported arrest for an offense). So the relevant question for the district court at a suppression hearing is whether the *facts presented* to the officer—facts to which the officer must testify with particularity—give rise to an objective basis for suspecting criminal activity when viewed under the totality of the circumstances standard. See *Terry*, 392 U.S. at 21-22 (noting that the objective standard of reasonable suspicion requires the court to ask whether the facts available to the officer at the moment of seizure or search would warrant a person of reasonable caution to believe the search or seizure was appropriate); *Jones*, 300 Kan. at 645 (an officer is not required to neatly package the reasonable suspicion factors in a single succinct answer; the court is required to consider "the totality of the circumstances, all facts and inferences, [and] not a select few").

Turning to the suppression hearing here, Officer Demarest testified she shone her flashlight on the rear floorboard of the van and observed a plastic baggie and a Crown Royal bag hanging out of the partially opened flat safe. In addition to hearing Demarest's testimony regarding her observations, the district court also had the benefit of reviewing the body camera video footage of the stop during the suppression hearing. This video was not included in the record on appeal. After hearing the testimony and reviewing the video, the district court ruled:

12

"During that time, the Officer, from a standpoint that she had a lawful right to be, looks into the back seat and sees this partially opened safe. From what she sees, a plastic baggie and a purple Crown Royal bag, both of which she identified based upon training and experience, that she associates with being drug paraphernalia, specifically that she has on numerous occasions found drug paraphernalia in a Crown Royal bag. . . . The Court does not find that this stop was unlawfully extended. As the Defendant is looking through his papers trying to locate the insurance and other things that she asked for, the Officer asked for, the Officer simply shone a light in the back seat of the vehicle and she had an absolute right to do. At that point she finds additional evidence, giving her reasonable suspicion to continue that stop and extend that stop to investigate what she believes is now a drug violation. So, I do not believe that she was limited to the traffic violation. Once she saw those item[s] in the safe and she saw them from a vantage point, that she had a legal right to be."

An appellate court is obligated to defer to what a district court reasonably discerns from recorded evidence, such as a videotape of an interrogation or a dash cam of a traffic stop. See *State v. Garcia*, 297 Kan. 182, 186-88, 301 P.3d 658 (2013) (appellate review of ruling on motion to suppress when police questioning of defendant has been videotaped requires deference to district court's findings of fact drawn from recording, even though record on appeal includes video); see also *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 442 P.3d 1038 (2019) (video recording of traffic stop). We, likewise, have no business reevaluating the testimony of witnesses on appeal. See *State v. Appleby*, 289 Kan. 1017, 1038, 221 P.3d 525 (2009). Based on the totality of the circumstances presented at the suppression hearing through witness testimony and body camera footage—circumstances that indisputably established the presence of a Crown Royal bag and a baggie hanging out of a partially opened safe on the rear floorboard of the van—the district court concluded that Demarest had reasonable suspicion to extend the stop. Given these circumstances, Demarest's failure to provide examples for subjectively believing the baggie or the safe were suspicious and her failure to expressly

13

testify that she subjectively considered all of the facts collectively to be suspicious did not prevent the district court from considering the baggie and the safe in its reasonable suspicion calculus. Again, the court is required to view the evidence presented in a totality of the circumstances context by considering all facts and inferences, not a select few in isolation. See *Jones*, 300 Kan. at 645.

Because the district court properly assessed the totality of the circumstances in its reasonable suspicion analysis, we conclude the Court of Appeals panel did not improperly make factual findings about the baggie and the safe in affirming the district court's reasonable suspicion decision.

b. *The district court's decision regarding an objective basis for suspecting criminal activity*

Cash alternatively argues that, even if the plastic baggie and the safe are considered, there is insufficient evidence to give rise to an objective basis for suspecting criminal activity. Again, we begin with a review of the facts that were available to Officer Demarest at the moment she began inquiring about the safe. We then must determine whether those facts, when viewed under the totality of the circumstances standard, gave rise to a particularized and objective basis for criminal activity. See *Jones*, 300 Kan. at 644-45.

Officer Demarest testified that she began questioning Cash about the safe right after she observed a plastic baggie and a Crown Royal bag hanging out of the partially opened flat safe in the back of the van. Cash argues these facts are insufficient to give rise to an objective basis for suspecting criminal activity because there are myriad innocent uses for clear plastic baggies, Crown Royal bags, and safes. But Cash's argument improperly utilizes an analysis that considers each of the items Demarest saw as a distinct

14

fact isolated from all others. This analysis ignores the requirement that we consider the totality of the circumstances and all facts and inferences gleaned from the collective circumstances. "The totality of the circumstances standard does not envision a reviewing court pigeonholing each factor as to innocent or suspicious appearances. Instead, the court determines whether all the circumstances [objectively] justify the detention." *Schooler*, 308 Kan. at 352.

> "'The relevant inquiry is not whether particular conduct is "innocent" or "guilty," but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts. [Citation omitted.] The totality of the circumstances standard precludes a "divide-and-conquer analysis" under which factors that are "readily susceptible to an innocent explanation [are] entitled to 'no weight.'" [Citations omitted.]'" *Schooler*, 308 Kan. at 352 (quoting *State v. Sharp*, 305 Kan. 1076, 1081-82, 390 P.3d 542 [2017]).

The facts presented in this case are undisputed and straightforward. Officer Demarest observed a partially opened safe in the back of a van which had no backseats. A plastic baggie and Crown Royal bag were hanging out of the safe. Demarest testified that in her training and experience a Crown Royal bag "more often than not" contains drug paraphernalia. Viewing collectively the facts available to Demarest at the time she asked Cash about the safe, and giving deference to what a district court reasonably discerns from these facts, we find the totality of the circumstances gave rise to a particularized and objective basis for suspecting that Cash was engaged in criminal activity. Officer Demarest's suspicion of criminal activity was grounded in facts that met the minimum level of objective justification required to support a reasonable suspicion as opposed to an "inchoate and unparticularized suspicion or 'hunch.'" *Moore*, 283 Kan. at 354. Because the officer had an objectively reasonable suspicion to extend the duration and scope of the traffic stop, the district court properly denied Cash's motion to suppress.

2. *The panel's decision on an objective basis for suspecting criminal activity*

Cash argues the Court of Appeals failed to examine whether Officer Demarest's subjective suspicion was objectively reasonable. On review of the panel opinion, we disagree.

To begin its analysis, the panel set forth the legal standard for assessing reasonable suspicion, noting specifically that reasonable suspicion represents a "'minimum level of objective justification.' [Citations omitted]." *Cash*, 2020 WL 1482413, at *3. The panel then turned to the facts to see if Demarest's *subjective* suspicion was *objectively* reasonable. 2020 WL 1482413 at *3 ("[W]e examine the facts to see whether Demarest had a reasonable suspicion of drug activity justifying the extension.").

Reasonable suspicion is a lower standard than probable cause. "What is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer." *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013). The totality of the circumstances standard "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). Viewing the totality of the circumstances from the perspective of a trained officer is different than simply adopting the detaining officer's subjective beliefs as objectively reasonable. Officer Demarest testified that when she previously came across Crown Royal bags, she "more often than not" found drug paraphernalia in them and had seen this "[m]ultiple times" before. This testimony is relevant to deciding whether an experienced and trained officer would have suspected, based on reasonable inferences from and deductions about the cumulative information available, that Cash had committed, was committing, or was about to commit a crime.

Viewing the totality of the circumstances instead of specific facts in isolation, the panel concluded the State met its burden to establish "the minimum level of objective justification required to support a reasonable suspicion." 2020 WL 1482413, at *4. As it was required to do, the panel examined Demarest's observations and the inferences she drew from those observations as part of its totality of the circumstances analysis. The Court of Appeals properly examined and concluded that Officer's Demarest's subjective suspicion was objectively reasonable.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.