NOT DESIGNATED FOR PUBLICATION

No. 125,390

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TAMER CHRISTO,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Submitted without oral argument. Opinion filed April 12, 2024. Affirmed.

*Robb Edmonds*, of Bath & Edmonds, P.A., of Leawood, for appellant.

*Donald J. Cooper*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before GARDNER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Tamer Christo appeals the district court's decision affirming the Kansas Department of Revenue's (KDOR) suspension of his driver's license. He argues that the arresting officer lacked probable cause to believe he was driving under the influence, so the officer could not require him to submit to a breath test. But we find that, under the totality of the circumstances, the arresting officer had probable cause to believe Christo was driving under the influence. We thus affirm the district court's upholding of the KDOR's administrative suspension order.

1

*Factual and Procedural Background*

On the evening of December 20, 2020, Tamer Christo was involved in a relatively minor, one-car accident in Overland Park when he crashed into a curb. Christo's son Alexander Christo, and Alexander's two friends Sultan Bayazid and Luke Pelliccia, were also in the car at the time of the accident. Someone left the scene, went to the Christos' nearby home, and returned to the scene of the accident in Alexander's truck before Officer Bailey Kennedy of the Overland Park Police Department arrived. The officer found five people at the scene of the accident:  Christo, Alexander, Pelliccia, Bayazid, and Bayazid's father.

Upon approaching Christo, Kennedy immediately smelled the odor of alcohol coming from Christo's breath and saw Christo's bloodshot eyes. Christo admitted to Kennedy that he had consumed one beer that night. Kennedy asked Christo if he would be comfortable reciting the alphabet, and Christo became agitated and asked the officer if he was serious. Kennedy then observed Christo walking and concluded that Christo was "'walking around okay.'"

Kennedy then asked Christo to complete a series of field-sobriety tests. First, Kennedy instructed Christo to recite the alphabet from C to Q without singing, skipping, or repeating. But Christo tried to begin the test before Kennedy finished providing instructions and asked if he needed to recite the entire alphabet. After Kennedy repeated the instructions, Christo then performed the test as instructed.

Second, Kennedy asked Christo to count backwards from 99 to 79 without skipping or repeating. Christo became agitated and asked Kennedy if he was serious. Christo then counted backwards from 99 to 91 before restarting. He then counted from 99 to 98, jumped to 89, and counted down from 89 to 84 before he stopped and asked if he needed to continue. Kennedy directed Christo to count to the number to which he had

2

been instructed to count. Christo then counted backwards from 84 to 75. Kennedy concluded that Christo failed the counting test. During that test, Christo told Kennedy that the accident had occurred over two hours ago. Christo also said that he had walked home after the accident, consumed a couple more alcoholic drinks, then returned to the scene of the accident in his son's truck.

Third, Kennedy asked Christo to perform a finger-dexterity test. Kennedy instructed Christo to touch the tip of his fingers to the tip of his thumb while counting out loud and to do so twice. Yet Christo touched the tip of his thumb to the bottom of his fingers and performed the action only one-and-a-half times. Kennedy concluded that Christo failed the finger-dexterity test.

Fourth, Kennedy asked Christo to perform the horizontal gaze nystagmus (HGN) test, the results of which are not in the record on appeal.

Fifth, Kennedy asked Christo to perform a walk-and-turn test. Christo told Kennedy that he had a torn ligament which impaired his walking. But Kennedy saw that Christo did not limp or otherwise show that his knee was bothering him when he walked to the testing area. Still, once the walk-and-turn test began, Christo indicated to Kennedy that he had a limp. Kennedy observed these indications of impairment during Christo's performance of the walk-and-turn test: (1) started too soon (and twice); (2) made the wrong number of steps; (3) made an improper turn; (4) stepped off the line; (5) could not maintain his balance; and (6) raised his arms. Kennedy concluded that Christo failed the walk-and-turn test.

Finally, Kennedy asked Christo to perform a one-leg standing test. Christo told Kennedy that he could not perform the test because of the torn ligament in his knee. Kennedy responded that Christo could stand on his other leg. Christo then took out his phone and began recording Kennedy and asked him to repeat the instructions for the test,

3

which Kennedy did. Christo again stated that he could not raise his leg due to the injury, and he thus did not attempt the one-leg standing test.

Kennedy then walked over to Alexander, Pelliccia, Bayazid, and Bayazid's father. Kennedy asked the group how many people were in the car at the time of the accident, and one of the teenagers responded that three people had been in the car. The group then told Kennedy that the accident had occurred 45 minutes to an hour ago. The group also told Kennedy that everyone had remained at the scene of the accident, except for Bayazid who had gone to get his father. Bayazid's father told Kennedy that he did not know Christo and that Christo had not gone to the Bayazid's house to drink. Kennedy asked Alexander how long ago the accident had occurred, and Alexander responded that it had occurred about 45 minutes ago. Kennedy also asked Alexander, "'Your father didn't leave to go drink for an hour and come back here?'" And Alexander responded, "'No.'"

Kennedy then returned to Christo and asked him to submit to a preliminary breath test, which Christo refused. Kennedy then arrested Christo for driving under the influence. After escorting Christo to his patrol car, Kennedy personally served Christo with a copy of the officer's certification and notice of driver's license suspension and read him the testing notices out loud. Kennedy's certification and notice of driver's license suspension identified these reasonable grounds for his belief that Christo was under the influence of alcohol: (1) odor of alcohol; (2) sobriety tests showed impairment; (3) slurred speech; (4) bloodshot eyes; (5) difficulty communicating; (6) poor balance or coordination; (7) statement that he consumed alcohol; and (8) refusal of a preliminary breath test. Kennedy then asked Christo to submit to a blood alcohol content test, to which Christo repeatedly responded that he wanted to speak with an attorney. Kennedy considered Christo's repeated request to speak to an attorney as a refusal to submit to the requested blood alcohol content test. Kennedy recorded his encounter with Christo and others on his body camera.

4

Christo later requested an administrative hearing with the KDOR at which he argued, among other things, that Kennedy lacked probable cause to believe that he was driving under the influence and thus could not require him to submit to a test. The administrative hearing officer disagreed. The hearing officer affirmed the suspension of Christo's driver's license after concluding that Kennedy did have probable cause to believe that Christo was driving under the influence. Christo then petitioned for review of the KDOR's suspension order in Johnson County District Court under K.S.A. 8-259(a). His petition for review asserted, among other grounds for relief, that "there was no reasonable grounds/probable cause that Mr. Christo was operating the vehicle under the influence of alcohol or drugs."

The district court held a de novo bench trial. At trial, Kennedy reiterated that he had relied on the factors he listed in his certification and notice of driver's license suspension in concluding that Christo was driving under the influence. Kennedy testified that

- Christo's argumentative demeanor was another indication of impairment;
- he did not observe that Christo had any problem walking before the field sobriety tests;
- he did not find Christo's claim that he went home to drink before returning to his crashed car credible because people involved in accidents typically stay at the scene of the accident rather than going home to drink and then returning; and
- he took the results of the HGN test into account when deciding whether to arrest Christo for driving under the influence, but he would have arrested Christo even without the results of that test.

Bayazid testified that after Alexander returned to the scene of the accident in his truck, he drove Christo to Christo's home in the truck. Bayazid further testified that he and Christo were at Christo's home for approximately an hour-and-a-half and, while

5

there, he saw Christo consume two glasses of alcohol and some pain medication. Pelliccia likewise testified that Bayazid and Christo left the scene of the accident in Alexander's truck and returned approximately an hour-and-a-half later. Alexander similarly testified that Bayazid had driven Christo back to their home before later returning to the scene of the accident. Christo likewise testified that Bayazid drove him in Alexander's truck to his home where he consumed two double shots of tequila and two Percocet pills before returning to the scene of the accident at least an hour-and-a-half later. Christo's wife, Lisa Christo, also testified that she had seen Bayazid and Christo return to their home where Christo consumed tequila and pain medication.

Kennedy's bodycam footage was admitted into evidence and the district court viewed and relied on it in reaching its decision. But the footage was not included in the record on appeal, so it is unavailable to us in reviewing the district court's judgment.

The district court upheld the KDOR's administrative suspension of Christo's driver's license. Its order summarized the indicators of impairment on which Kennedy relied in concluding that Christo was driving under the influence:

"Officer Kennedy testified that he had reasonable grounds to believe that Mr. Christo had operated a vehicle while under the influence of alcohol under the totality of the circumstances, which included (but not limited to): (1) the odor of alcohol coming from his breath; (2) his blood shot eyes; (3) his admission to drinking beer before driving; (4) being involved in a motor vehicle accident; (5) the failure to complete the alphabet, finger dexterity and walk and turn tests; (6) his agitated attitude during the investigation; and (7) his unsubstantiated claim that he could not perform tests due to his knee, although he was observed walking normally; (8) his refusal to take a preliminary breath test; (9) various statements from passengers involved in the car accident; (10) his difficulty in communicating; (11) his poor balance and coordination during standardized field sobriety testing; (12) his false statements; and (13) his failure to follow instructions."

6

The district court concluded that Kennedy had probable cause to believe Christo was driving under the influence, so he could require him to submit to a test. In reaching this conclusion, the district court emphasized some credibility issues with the witnesses' testimony that Christo had left the scene of the accident, consumed alcohol and medication, then returned to the scene before encountering Kennedy:

> "There are significant credibility issues in this case in the way the accident happened, the explanations for how long before it had happened, whether petitioner left the scene to go home to drink (and take a drug) and whether his false statements included his statement that he had one beer before driving. Because of the credibility issues, the officer reasonable [*sic*] could have concluded that petitioner was driving and impaired at the time of the accident and not as the result of any subsequent claim to have gone home before the police arrived. . . . [A] reasonably prudent officer under the totality of the circumstances in this case would have believed that the driver's guilt was more than a mere possibility to justify a request for testing.
>
> "Accordingly, because the police officer had sufficient reasonable grounds and probable cause to request that petitioner take a breath test, which he refused, his refusal is sufficient to affirm the agency's suspension of petitioner's driver's license. [Citations omitted.]"

Christo timely appeals.

*Did Kennedy Have Probable Cause to Believe Christo Was Driving Under the Influence?*

*Standard of Review*

Appeals from the administrative suspension of driver's licenses are subject to review under the Kansas Judicial Review Act. K.S.A. 8-259(a); K.S.A. 77-601 et seq.; *Rosendahl v. Kansas Dept. of Revenue*, 310 Kan. 474, 480, 447 P.3d 347 (2019). On appeal, the burden of proving the invalidity of the agency action rests on Christo as the party asserting the invalidity. See K.S.A. 77-621(a)(1); K.S.A. 8-1020(q).

The KJRA permits judicial relief only for eight statutorily enumerated reasons. K.S.A. 77-621(c); *Johnson v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 431, 442, 472 P.3d 92 (2020). But Christo cites none of them. This is problematic because "specificity in pleading under the KJRA is necessary to give focus to the asserted agency error and to give the reviewing court a proper understanding of the type of relief sought." *Pittsburg State University v. Kansas Bd. of Regents*, 30 Kan. App. 2d 37, 45, 36 P.3d 853 (2001); see also *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 697, 216 P.3d 170 (2009) ("Such specification is important because a court reviewing an administrative agency's action may grant relief only if it determines one or more of those provisions is violated.").

Christo exclusively argues that the KDOR's administrative suspension order is invalid because it erred in determining that Kennedy had probable cause to believe that Christo had been driving under the influence. We thus liberally construe Christo's brief as challenging the validity of the KDOR's decision under K.S.A. 77-621(c)(4)—"the agency has erroneously interpreted or applied the law"—or under K.S.A. 77-621(c)(7)—"the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial." See *EagleMed v. Travelers Insurance*, 315 Kan. 411, 419, 509 P.3d 471 (2022) (inferring statutorily enumerated basis for judicial relief when appellant failed to specify one).

We review a district court's factual findings in a license suspension matter for substantial competent evidence and review the district court's legal conclusions derived from those factual findings de novo. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 469, 447 P.3d 959 (2019); *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213, 442 P.3d 1038 (2019). "The determination of whether an officer has reasonable grounds for a particular action involves a mixed question of law and fact, and appellate courts review the ultimate legal conclusion—whether reasonable grounds existed—independently, while deferring to the district court's factual findings." 309 Kan. at 1213. Substantial

8

competent evidence is evidence that possesses both relevance and substance and furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Creecy*, 310 Kan. at 469.

*Governing Law*

K.S.A. 2020 Supp. 8-1001(b)(1) provides:

"One or more tests may be required of a person when, at the time of the request, a law enforcement officer has probable cause to believe the person has committed a violation of K.S.A. 8-1567(a) [DUI], and amendments thereto, . . . or to believe the person is under the age of 21 years and was operating or attempting to operate a vehicle while having alcohol or drugs in such person's system; and one of the following conditions exists:   (A) The person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance; or (B) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury or death."

Prior versions of the statute required law enforcement officers to possess "reasonable grounds" rather than "probable cause," but the Kansas Supreme Court has long equated those standards for purposes of requiring licensees to submit to a test under K.S.A. 8-1001. See, e.g., K.S.A. 2017 Supp. 8-1001(b)(1) (requiring a law enforcement officer to possess "reasonable grounds" that the licensee was driving under the influence); *Rosendahl*, 310 Kan. 474, Syl. ¶ 3 ("Kansas courts evaluate reasonable grounds by looking to probable cause standards."); *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010) ("This court has found the term 'reasonable grounds' synonymous in meaning with 'probable cause.'").

"Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant

9

has committed or is committing a specific crime." *Rosendahl*, 310 Kan. 474, Syl. ¶ 3. The existence of probable cause is determined by evaluating the totality of the circumstances, the information, and the fair inferences from it known to the officer at the time. *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012).

*Analysis*

The only issue on appeal is whether Kennedy had probable cause to believe Christo was driving under the influence, as K.S.A. 2020 Supp. 8-1001(b)(1) requires, before Kennedy could require Christo to submit to a test. Christo does not argue that Kennedy lacked probable cause to believe he was under the influence when they encountered each other. Instead, Christo contends that he was not under the influence at the time the accident occurred, and he left the scene of the accident and consumed alcohol and a painkiller medication before he returned and met Kennedy. Christo generally makes two arguments on this point.

First, Christo argues that Kennedy

"did little to investigate the viability of intervening intoxication. Essentially, he talked to witnesses on the scene who gave conflicting information about whether Mr. Christo did or did not leave the scene of the accident and then return sometime later. Beyond those conversations, Kennedy did nothing to investigate what Mr. Christo told him."

We agree that an officer cannot be willfully ignorant of a suspect's post-driving alcohol consumption. The Kansas Supreme Court has held that "[e]vidence of a licensee's post-driving alcohol consumption may be considered in a driver's license suspension proceeding's evaluation of whether a law enforcement officer had the reasonable grounds required under K.S.A. 8-1020(h)(2)(A)." *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, Syl. ¶ 2, 281 P.3d 135 (2012); see also *Martin v. Kansas Dept. of Revenue*, 285 Kan.

10

625, 631, 176 P.3d 938 (2008) ("'Reasonable grounds to believe' a driver is under the influence . . . demands consideration of the behavior of a driver before, during, and after he or she is behind the wheel."), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015); *Katz v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 877, Syl. ¶ 8, 256 P.3d 876 (2011) ("Under K.S.A. 2009 Supp. 8-1020(h)(2)(A), a person's consumption of alcohol after driving but before submitting to a breath alcohol test may be a relevant factor in the determination of whether the law enforcement officer had reasonable grounds to believe the driver was operating the vehicle while under the influence of alcohol.").

Relatedly, the Kansas Supreme Court has held that it behooves an officer who has notice of post-driving alcohol consumption to investigate it.

> "An officer cannot insulate his or her assessment of the existence of reasonable grounds from review or criticism by a district or appellate court by maintaining a posture of willful ignorance on a suspect's post-driving alcohol consumption. Reasonableness is key. If the situation is such that a reasonable law enforcement officer would investigate, it behooves an actual officer to do so. This is particularly true when an officer's personal observations of the scene or the suspect suggest the possibility of post-driving alcohol consumption. Such consumption is a factor to be considered and evaluated. Reasonable grounds to believe a driver is under the influence demands thoughtful examination of the behavior of a driver before, during, and after he or she is behind the wheel." *Rosendahl*, 310 Kan. 474, Syl. ¶ 4.

Here, the suspect told Kennedy at the scene of the accident that he had left the scene and consumed alcohol before returning. Thus, a reasonable law enforcement officer in Kennedy's position would have investigated the possibility of intervening intoxication.

But the record shows that Kennedy sufficiently did so. He investigated whether Christo left the scene of the accident, consumed alcohol, and returned. After Christo told

11

Kennedy that he had done so, Kennedy asked Christo's son, Alexander, whether Christo had done that, and Alexander responded that he had not. And when Kennedy spoke to Alexander's friends at the scene, they told Kennedy that everyone had remained at the scene of the accident except for Bayazid, who had gone to get his father. Those statements, although contradictory to Christo's statements at the scene, support a reasonable belief that Christo did not leave the scene of the accident to consume alcohol. Kennedy "did not ignore or maintain a posture of willful ignorance toward evidence suggesting the possibility of post-driving alcohol consumption." *Rosendahl*, 310 Kan. 474, Syl. ¶ 5.

Although Alexander and others testified at trial that Christo had left the scene of the accident and consumed alcohol before encountering Kennedy, Kennedy had no such evidence when he asked Christo to submit to a test. And the district court, in its well-reasoned decision, explained why it found the on-the-scene statements and Kennedy's testimony more credible than the witnesses' self-contradictory trial testimony. And in reviewing the district court's factual findings, this court "will not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *Creecy*, 310 Kan. at 469.

Second, Christo argues that the video of the accident scene shows the truck that brought him back to the scene after he had left, corroborating his testimony. But Kennedy's reasonable belief that Christo never left the scene of the accident is not inconsistent with the fact that Alexander's truck was also at the scene. The truck's presence at the scene does nothing to prove that Christo had left the scene and then returned in the truck. Many other scenarios could explain its presence there. Perhaps Alexander ran home and got his truck from their nearby family home, while Christo stayed at the scene of the accident. "'In determining whether substantial competent evidence supports the district court's findings, appellate courts must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the

12

district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it.'" *Casper*, 309 Kan. at 1220 (quoting *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 [2017]). We do so here. We find substantial evidence supporting the district court's factual findings, and no error of law.

Under the totality of the circumstances known to Kennedy at the time he requested Christo to submit to a test, he had probable cause to believe that Christo was driving under the influence. Christo has failed to carry his burden of proving the invalidity of the KDOR's administrative suspension order. The district court therefore did not err in upholding that order.

Affirmed.